## CHARLESTON.

JONES *v.* KESSLER.

(No. 4993.)

Submitted February 26, 1924.   Decided January 14, 1925.

1. EVIDENCE—*Parol Evidence Not Admissible to Vary Terms of written Contract Not Uncertain as to Object or Extent of Engagement.*

   When a written contract upon its face is couched in such terms as to import a legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent of the undertaking were reduced to writing. Parol evidence will not be admitted to vary its terms.   (p. 16).

   (Evidence, 22 C. J. § 1459.)

2. CONTRACTS—*Written Contract May Be Modified or Altered by Oral Agreement; As Rule Consideration Must Be Shown for Oral Agreement Altering Written Contract.*

   However, a written contract may be modified or its terms altered by a subsequent valid oral agreement, and this may be shown in a proper case.   As a rule a consideration must be shown.   (p. 16).

   (Contracts, 13 C. J. §§ 604, 607; Evidence, 22 C. J. § 1693.)

3. APPEAL AND ERROR—*Verdict Unsupported by Evidence Submitted to Jury Should Be Set Aside.*

   A verdict which is unsupported by the evidence submitted by the court to the jury should be set aside.   (p. 17.)

   Appeal and Error, 4 C. J. § 2853.)

4. NEW TRIAL—*Verdict Based on Evidence Stricken Out Should Be Set Aside.*

Where there are several charges set up in the declaration for breaches of certain agreements charged to have been made between the plaintiff and the defendant, and the plaintiff introduces evidence on all of said breaches and upon the conclusion of plaintiff's evidence, the court, on motion of the defendant, strikes out all of the evidence of the plaintiff, except that which relates to one of said breaches, and the defendant introduces his evidence in defense of that breach only, and the jury finds a verdict on the evidence so stricken out, the verdict should be set aside. (p. 17).

New Trial, 29 Cyc., p. 824 [1926 Anno.])

5. CONTRACTS—*Party Suing for Damages for Breach of Contract Must Show Compliance Therewith, or That He Was Prevented or Relieved from Compliance by Defendant.*

Where the plaintiff claims damages for the breach of a contract, it is necessary to a recovery that he show that he has complied with the contract himself, or that he has been prevented or relieved from compliance by act of defendant; and, if the evidence shows that he has not complied with the terms of the contract, and has not been prevented or relieved therefrom as aforesaid, he will be denied a recovery from the breach of same. (p. 16).

(Contracts. 13 C. J. § 953.)

6. NEW TRIAL—*Proper Practice in Case Jury Returns Verdict Based on Evidence Properly Before It, with Separate Verdict Based Upon Evidence Which Had Been Excluded, Stated.*

In a suit for the breach of several provisions contained in two separate contracts, where the court upon the trial of the case excludes all of the plaintiff's evidence, except the evidence relative to one of the breaches charged in the declaration, and the defendant makes his defense and offers his evidence in denial of said breach only, and the jury finds a verdict assessing damages for the said breach, and also a separate verdict for the damages based upon the evidence which had been excluded, the verdict should be set aside, unless the plaintiff elects to accept the verdict rendered by the jury upon the evidence properly before it, and agrees to remit the damages found by the jury upon the evidence which had been excluded by the court. (p. 17).

(New Trial, 29 Cyc. p. 1021.)

(NOTE: Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Action by Arthur S. Jones against A. K. Kessler. From a judgment setting aside verdict and granting new trial, plaintiff brings error.

*Affirmed.*

*George I. Neal* and *George S. Wallace,* for plaintiff in error.
*John W. Perry, John S. Marcum* and *Holt, Duncan & Holt,* for defendant in error.

WOODS, JUDGE:

This is an action in assumpsit for the breach of certain contracts alleged to have been made between the plaintiff and the defendant. The declaration contains three counts. The first is the common count in assumpsit. The second count alleges that on the 6th day of May, 1921, and for some time immediately prior thereto the plaintiff was located in the City of Cleveland in the state of Ohio, and was engaged in the practice of his profession as orthopedic surgeon, that in addition to his general practice, he had a number of hospital connections, was enjoying a good practice and receiving a good return from his professional work, and his practice was steadily growing. That some time prior to the 6th day of May, 1921, plaintiff met the defendant, who was then and is now a physician and surgeon engaged in practice in the City of Huntington, West Virginia, and owned stock in the Kessler-Hatfield Hospital and Training School, located at Huntington, West Virginia; and the said defendant together with Drs. J. E. Rader, C. T. Taylor and H. D. Hatfield each owned one-fourth of the stock of the Greater Huntington Hospital Association, a West Virginia corporation, which was operating the Kessler-Hatfield Hospital and Training School at Huntington, and the New General Hospital; and the last named men had a partnership between them under the terms of which all surgical fees earned by any one of them were placed in a common fund and at frequent intervals were divided among them. At the meeting between this plain-

tiff and defendant they discussed, at some length, the plaintiff's qualifications and attainments as orthopedic surgeon, and the said defendant became impressed with the idea that if he could induce the plaintiff to give up his Cleveland connections and move to the City of Huntington that the defendant could, by reason of his hospital connections, bring about the organization of a large clinic and therefore enable this plaintiff to have most valuable experience in and about the practice of his profession and would add to the general usefulness of the Greater Huntington Hospital Association and its subsidiary institutions.   As an incident to this project, the defendant made a proposition in writing to Dr. H. C. Jones, who is the father of this plaintiff, Arthur S. Jones, under date of May 6, 1921, which is in the words and figures following, to-wit:

"Drs H. C. and ARTHUR S. JONES,
    Huntington, W. Va.

GENTLEMEN: .

. I hereby agree to sell to you a three-fourths interest that I have in the Greater Huntington Hospital Association that is to say, that Drs. J. E. Rader, C. T. Taylor, H. D. Hatfield and myself are equal owners, and I one-fourth, and am selling a three-fourths interest in my one-fourth interest; and also three-fourths of my interest, whatever that may be, in the Williamson Hospital at Williamson, West Virginia; and three hundred and seventy-five shares (375) of the capital stock of the Kessler-Hatfield Hospital and Training School, at Huntington, West Virginia, conditioned that you pay me Twenty Thousand ($20,000.00) Dollars cash, pay the Union Savings Bank & Trust Company of Cincinnati, Ohio, Fifteen Thousand ($15,-000.00) Dollars, or assume the payment of a note that I owe to this bank, and to get me relieved from the further obligation on that note; and to pay to the Ohio Valley Bank, Huntington, West Virginia, the 26th of April, 1921, Ten Thousand ($10,000.00) Dollars, that I owe that Bank, or to get me relieved from further obligation on that note, and to pay me the balance of the Sixty Thousand ($60,000.00) Dollars within six (6), twelve (12) and eighteen (18) months respectively, from this date, which is to be evidenced by

notes bearing six per cent interest from May 6th, 1921. This does not include any bills collectible or payable at Huntington, West Virginia, to May 1st, 1921.

You are to pay your portion, or whatever proportion that I would have to pay, considering the interest that I am selling to you, as that would appear to $31,000.00, notes at Williamson and Logan, West Virginia. These notes are probably held by banks at Logan and Williamson, West Virginia, and the amount is about $31,000.00.

You are likewise to pay as your interest should appear, the same as I would have to pay, if I did not sell to you any interest, your proportion of whatever indebtedness may have been incurred by equipments, building repairs, etc., at Williamson, West Virginia.

This agreement is to be construed to mean that you only are to pay whatever I, myself, would have to pay, if I did not sell to you any interest, as above indicated.''

Which proposition was then and there accepted by H. C. Jones and Arthur Jones with the modification endorsed thereon that the consideration set out in said proposition should be modified in this: that H. C. Jones and Arthur S. Jones would pay to the said Kessler the sum of Twenty Thousand ($20,000.00) Dollars cash and would turn over to him three notes made by A. J. Dalton and John A. Kelley of Five Thousand ($5,000.00) Dollars each falling due, six (6), twelve (12) and eighteen (18) months after date respectively, and that the cash payment and these notes were in full of the cash provided for under the terms of said proposal, and that the Joneses were to assume the note of Fifteen Thousand ($15,000.00) Dollars in the Union Bank and Trust Company of Cincinnati, Ohio, and the note of Ten Thousand ($10,000.00) Dollars due the Ohio Valley Bank at Huntington, West Virginia; that said contract was made for the sole benefit of the plaintiff. The declaration further alleges that this memorandum in writing did not, at the time it was executed, embody the terms of the contract then and there being considered by the plaintiff and defendant, but it was simply a proposal covering the phase of the contract

with reference to the price of the stock and the terms of the
payment, and this plaintiff and defendant entered into a
contract entirely apart from the written memorandum above
set out, under the terms of which last mentioned contract,
in consideration of Dr. H. C. Jones and plaintiff purchasing
from the defendant the interest in the several hospitals men-
tioned in said memorandum in writing above set out and the
defendant then and there agreed that he would cause a
statement to be made from the books and accounts of the
two corporations, namely, The Greater Huntington Hospital
Association and the Kessler-Hatfield Hospital and Train-
ing School, as of May 1st, 1921, and would furnish the plain-
tiff with a copy of such statement; that he would organize
a new hospital to be located at Logan, West Virginia, to be
controlled by or operated in connection with the Greater
Huntington Hospital Association; that he would then and
there turn over to the plaintiff seventy-five (75) per cent of
the stock owned by him in the Greater Huntington Hospital
Association and the Kessler-Hatfield Hospital and Training
School, at Huntington, West Virginia, and the Williamson
Hospital and agreed to sell and did sell to the plaintiff an
undivided interest in and to the surgical fees that might
thereafter be earned under the partnership arrangement
then existing between the defendant and Doctors J. E.
Rader, C. T. Taylor and H. D. Hatfield and further agreed
that he would forthwith organize a clinic to be composed of
the four doctors who owned an interest in the Greater Hunt-
ington Hospital Association, to-wit, J. E. Rader, C. T. Tay-
lor, H. D. Hatfield and the defendant, A. K. Kessler and of
the several doctors who might thereafter avail themselves of
the hospital facilities of the Greater Huntington Hospital
Association operated by them, which clinic would be open to
the plaintiff and represented to the plaintiff that the oppor-
tunities afforded to and experiences had by the plaintiff by
attending such clinic would be of incalculable benefit and
profit to him. The defendant further represented that his
reason for disposing of any part of his stock in the several
hospitals above set out was due to the fact that his health
was not as robust as it had been in the immediate past, and
by reason of this fact he would not be as active as he had

been; but he represented and agreed that he would continue to do his surgical work in one or the other of the two hospitals, namely, the New Huntington General Hospital or the Kessler-Hatfield Hospital and Training School, both of which were then being operated by the Greater Huntington Hospital Association, and all fees received by him for such surgery would be turned in to the partnership composed of the doctors above set out; and that the plaintiff should have seventy-five of the defendant's thirty per cent. part thereof.

The plaintiff further says that the said A. K. Kessler, notwithstanding his undertakings and agreement to deliver to the plaintiff a statement of the bills collectible and payable in the several hospitals as of May 1, 1921, to organize a new hospital to be located at Logan, West Virginia, and to be controlled by or operated in connection with the Greater Huntington Hospital Association, to organize the clinic above set out and to thereafter turn over to him seventy-five per cent. of thirty per cent. of the surgical fees derived from the partnership of the said Taylor, Rader, Hatfield and Kessler, and the said defendant refused to carry out said agreement. And the said A. K. Kessler not regarding his said promises, undertakings and agreement, but artfully contriving to injure the said plaintiff in that behalf, did not cause to be made and delivered to this plaintiff a statement of the accounts, bills collectible and payable as of May 1, 1921, did not organize a new hospital located at Logan, West Virginia, and controlled by or operated in connection with the Greater Huntington Hospital Association, did not organize said clinic or make any effort thereto, and did not turn over to this plaintiff seventy-five per cent. of the fees derived from the partnership existing between Rader, Taylor, Hatfield and himself, but, upon the contrary, on the second day of January, 1922, notified the members of said partnership that he would discontinue to participate in the partnership then and there existing for surgical work, and then and there entered into an agreement with certain of the stockholders and directors of the Kessler-Hatfield Hospital and Training School at Huntington, West Virginia, that they would withdraw this hospital from the management of the Greater Huntington Hospital Association and in pursuance of this agreement and

understanding a meeting of the directors of the Kessler-Hatfield Hospital and Training School was held on January 9th, 1922, and at that meeting over the objection and protest of the plaintiff, and by the active co-operation of the defendant, the directors of the Kessler-Hatfield Hospital and Training School formally withdrew from the Greater Huntington Hospital Association and the result of this action was to defeat absolutely the purpose for which the plaintiff and his father made a purchase of the interest hereinabove set out, to the damage of the plaintiff in the sum of One Hundred Thousand Dollars ($100,000.00).

The third count after reiterating charges set forth in the first part of the second count, charges that the defendant failed, neglected and refused to furnish the plaintiff a statement of the bills collectible and payable at Huntington, West Virginia, as of May 1st, 1921; and that he failed, refused and neglected to turn over to the plaintiff 375 shares of the capital stock of the Kessler-Hatfield Hospital and Training School; and that afterwards, to-wit, on the 9th day of January, 1922, he entered into an agreement and understanding with certain stockholders and directors of the Kessler-Hatfield Hospital and Training School at Huntington, West Virginia, that they would act together and take such action as was necessary to withdraw the Kessler-Hatfield Hospital and Training School from the management of the Greater Huntington Hospital Association and in pursuance of said agreement and understanding, a meeting of the directors of the Kessler-Hatfield Hospital and Training School held on January 9th, 1922, at which meeting, over the objection and protest of the plaintiff, and by the active co-operation and assistance of the defendant, A. K. Kessler, the withdrawal of said Kessler-Hatfield Hospital and Training School at Huntington, West Virginia, formally withdrew from the Greater Huntington Hospital Association and by means whereof the said plaintiff says that the purchase of stock of the Greater Huntington Hospital Association and the other additional interests purchased under the said terms of said memorandum of May 6th, 1921, was entirely destroyed to the damage of the plaintiff of One Hundred Thousand ($100,000.00) Dollars.

To this declaration the defendant pleaded the general issue. The case was tried and a verdict rendered by the jury for $42,750.13; $2,750.13 being for surgical fees and $40,000.00 for damages.

On motion of the defendant this verdict was set aside, and the plaintiff brings the case to this court on a writ of error, and assigns in his petition the following errors:

1. In holding that the paper writings of May 6th, 1922, expressed the entire agreement between the plaintiff and defendant, when in truth and in fact on its face it showed that it did not express the entire agreement.

2. In not permitting the plaintiff to prove the contract between himself and the defendant under the terms of which the plaintiff purchased from the defendant the interest in the several hospitals, surgical fees and the defendant agreed to form a clinic.

3. In excluding from the jury all of the plaintiff's evidence except that which related to the surgical fees.

4. In refusing to give plaintiff's instructions 2 and 3.

5. In giving defendant's instructions 3, 4, 5, 6 and 7.

6. In setting aside the verdict and granting defendant a new trial.

7. Because of errors apparent on the face of the record.

The evidence discloses that, prior to May 6th, 1921, the plaintiff who was an orthopedic surgeon was living in the City of Cleveland, Ohio, and there engaged in the practice of his profession; that he came to Huntington about the 1st of May, 1921, and there met the defendant, Dr. A. K. Kessler, who was at that time interested in the Greater Huntington Hospital Association, which was a West Virginia corporation, and operated two hospitals, namely, the Kessler-Hatfield Hospital and Training School, and the New Huntington General Hospital, and it was, so far as is disclosed by the evidence, not engaged in any other business, being organized for that purpose only. The stock in the Greater Huntington Hospital Association was owned in equal parts by Doctors

H. D. Hatfield, C. T. Taylor, A. K. Kessler and J. E. Rader, and the stock of the Kessler-Hatfield Hospital and Training School, which was also a West Virginia corporation, was owned and controlled by Drs. Hatfield and Kessler, and the New Huntington General Hospital, also a West Virginia corporation, the stock of which was owned by Drs. Taylor and Rader. In the conduct and operation of the Greater Huntington Hospital Association there was a partnership arrangement existing between Drs. Hatfield, Kessler, Taylor and Rader, under the terms of which all surgical fees earned by them were placed in a common fund and divided between them, 30 per cent. to Kessler, 30 per cent. to Hatfield, and 20 per cent. each to Taylor and Rader. After some negotiations between the plaintiff and defendant the written contract, above referred to, was entered into, by which it will be seen that the plaintiff purchased 375 shares of the capital stock of the Kessler-Hatfield Hospital and Training School; a ¾ interest in the ¼ interest then owned by the defendant in the Greater Huntington Hospital Association; and a ¾ interest in what the defendant owned in the Williamson Hospital at Williamson, West Virginia, for which stock and interest the plaintiff agreed to pay the defendant $60,000.00, to be paid or assumed as set forth in the written proposal above set out. The defendant submitted said written proposition to the plaintiff and his father, Dr. H. C. Jones, on the 6th day of May, 1921, and it was accepted by them, both of whom signed the acceptance on that day, and on this same day the defendant signed a receipt in full for the cash payment and certain notes amounting to $15,000.00, which receipt stipulates that "These payments with the assumption of the two notes mentioned above is in full settlement for the stock and interest mentioned above." From the wording of the receipt we assume it was written under the proposal and on the same paper. We think that the written proposition by the defendant and the acceptance by the plaintiff constituted a plain and unambiguous contract. It states what the defendant sold to the plaintiff, what he was to pay for it, and how and when it was to be paid or assumed. The plaintiff claims that after the contract was accepted by him that he and the defendant

entered into an oral agreement, and the breach of this sub-sequent oral agreement and the failure upon the part of the defendant to deliver to the plaintiff one hundred and fifty shares of the capital stock of the Kessler-Hatfield Hospital and Training School, sold to the plaintiff under the written contract, are the subjects of this controversy. It is also shown by the evidence that subsequent to the signing and acceptance of said written proposal that the defendant with-drew from the partnership arrangement relative to the sur-gical fees, as above stated, and that the Kessler-Hatfield Hos-pital and Training School withdrew from the Greater Hunt-ington Hospital Association. It appears that the withdrawal of the Kessler-Hatfield Hospital and Training School from the Greater Huntington Hospital Association was brought about by reason of some dissention which occurred among the parties interested in the Greater Huntington Hospital Asso-ciation and the persons in control of the majority of the stock of the Kessler-Hatfield Hospital and Training School, and at a meeting of the stockholders and directors of the Kessler-Hatfield Hospital and Training School those in con-trol of a majority of the stock, including the defendant, voted to withdraw said hospital from said association, which was accordingly done, the effect of such withdrawal being to destroy both the partnership and the association.

It was also shown that the plaintiff was paid 75 per cent. of the 30 per cent. of the surgical fees owned by the defendant from May 1, 1921, until January 15, 1922, which is the date of the withdrawal of the Kessler-Hatfield Hospital and Training School from the Greater Huntington Hospital As-sociation.

The plaintiff claims that the defendant breached an alleged oral agreement entered into between him and the defendant subsequent to the written contract, which alleged oral agree-ment refers to the formation of a clinic and a division of the surgical fees. What this subsequent verbal agreement was is disclosed by the questions asked by the attorney and the answers given by the plaintiff, which are as follows:

> COLONEL WALLACE: "Doctor, I will ask you to tell the jury in your own way what contract, if any, verbal I mean, that you had with Dr. Kess-

ler subsequent to the written contract of May 6th, 1921.''

DOCTOR JONES: ''The contract was that I was practically to take his place in the hospital.''

COLONEL WALLACE: ''Doctor, will you be more specific in your answer?''

DOCTOR JONES: ''I was to kind of step into his shoes, and he was to kind of take a more retired position, and turn over ¾ of the surgical earnings at the hospital, as a matter of fact ¾ of the entire interest of the hospital and the Greater Huntington Association. And he was to help me morally and in any way professionally that he could. We were to take care of his son coming on, and that was assured him, and he was in poor health and wanted to retire and I was entering in and practically taking his position in the entire institution and with his associates.''

At the conclusion of the evidence on the part of the plaintiff the defendant moved, first to exclude the evidence of the plaintiff and direct a verdict for the defendant; secondly, to exclude all the evidence from the jury that relates to any supposed contract pertaining to the formation of a clinic or any interest in the surgical fees.

In passing upon this motion the court said:

''Gentlemen of the jury, on motion of the defendant in this case, all of the evidence in this case is stricken out and will not be considered by you, except evidence relating to whether or not the plaintiff is entitled to recover upon the question of surgical fees. I will limit this case to that one point, and that is for you to determine from all of the evidence in this case. So that now the case will proceed upon that question and that question alone.''

The defendant then proceeded to introduce his evidence along the lines indicated by the court.

The defendant testified that the written contract constituted the agreement between him and the plaintiff, and that no other agreement or understanding was entered into between him and the plaintiff, except that he told the plaintiff that on account of his illness he would not be able to carry on

the work contemplated by the partnership arrangement to be performed by him, and that if the plaintiff would take over and perform such work he would give him 3/4 of his 1/4 share in the surgical fees contemplated by said partnership until such time as he regained his health sufficiently to resume the same, and that under that arrangement the plaintiff was paid 3/4 of defendant's interest in the surgical fees. The defendant further states that the withdrawal of the Kessler-Hatfield Hospital and Training School was not brought about by him, nor did he in any manner try to influence the other stockholders or directors in such action. He however voted his stock for said withdrawal.

It also appears from the evidence, that Drs. Hatfield, Lawson, Sutphin and Johnson owned a majority of the stock of the Kessler-Hatfield Hospital and Training School, and that each of them voted their respective stock for said withdrawal, and there is no proof that the defendant influenced or attempted to influence any of said stockholders or the directors of said hospital to vote for said withdrawal.

At the conclusion of defendant's evidence and the rebuttal testimony of the plaintiff, and after having received the instructions of the court, the jury rendered its verdict in the following words:

> "We, the jury, do agree and find for the plaintiff and assess his damages as follows: Twenty-seven Hundred and Fifty and 13/100 ($2,750.13) Dollars for surgical fees, and Forty Thousand Dollars for damages, making a total of $42,750.13."

It appears that the formation of the clinic referred to in the subsequent verbal contract, claimed by the plaintiff, was discussed before the written contract was signed and accepted by the plaintiff. And from the testimony of the plaintiff it appears that the question of surgical fees was not discussed prior to the execution of the written contract. The plaintiff testified that the formation of the clinic was his main object in "Coming to Huntington and getting together." The plaintiff further testified that these surgical fees were the most vital part of the subsequent verbal contract. Now the formation of the clinic was discussed before the written

contract was entered into, and was the main thing which caused the plaintiff to enter into the written agreement, but it is not referred to therein, but the plaintiff says the case is not governed by the familiar parol evidence rule in reference to written contracts, for the reason that the agreement to form the clinic and to sell plaintiff ¾ of the surgical fees to be derived from the partnership arrangement mentioned in the evidence was made subsequent to the written contract and was therefore an independent contract between the parties, but that the consideration for these subsequent promises was included in the consideration mentioned in the written contract. The written agreement is unambiguous in its terms, it sets forth what the plaintiff purchased from the defendant, and what and how the plaintiff was to pay for it, and standing alone nothing could be added to or taken away from it. That these parties were free to enter into any subsequent contract they might see fit to make is unquestioned, but unless a separate consideration was paid or agreed to be paid, or it was agreed between the parties that the consideration mentioned in the written contract was to cover these subsequent promises in the subsequent contract an action cannot be maintained thereon for the breach of same. But in this case the plaintiff contends and offers to prove that at the time of the execution of the written contract, the parties agreed that it was only intended to cover the matters therein mentioned, and the manner of payment for same, but that there were other agreements between the parties about other things, and it was agreed between the parties that these other matters were to be omitted from the written contract, and that the consideration mentioned in the written contract was to cover the agreements not mentioned therein, the details of which were afterward verbally agreed upon.

In this case the plaintiff offered to prove that at the time the contract of May 6th, 1921, was entered into it was not intended to and did not cover the entire contract but was only intended to cover the manner of payment, and consideration for the contract then and there being considered; that the contract had been discussed in a general way and that after the execution of such contract which had been discussed a subsequent agreement was entered into covering the

matters which had been intentionally left out of the written contract.  Upon objection by the defendant the lower court rejected this testimony and to the ruling of the court in rejecting it the plaintiff excepted.

The parol evidence rule assumes agreement upon the writing in question as a complete statement of the bargain.  If the parties never adopt the writing as a statement of the whole agreement, the rule does not exclude parol testimony of additional promises.  Willison on Contracts, Section 636.  The decisions are in conflict on this proposition.  Possibly the principle announced in the text is best expressed by Fuller, C. J., in *Seitz* v. *Brewers' Refrigerating Machine Co.,* 141 U. S. 510.  "Undoubtedly the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them.  But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the * * * contract applies; that is, it must not be so closely connected with the principal transaction as to form part or parcel of it."

Making application of this rule to the case under consideration can it be properly inferred by a reading of the paper and the circumstances of the case that it is not a complete and final statement of the whole transaction?  The interest in the various hospitals conveyed by the defendant to the plaintiff is fully described.  The plaintiff is to receive such interest as the defendant owns in said hospitals.  The consideration is set out with particularity.  The writing upon its face is couched in such terms as imports a legal obligation without any uncertainty as to the object or extent of the engagement.  The change that is sought to be engrafted on the written instrument by parol evidence—that of establishing a clinic in connection with the hospitals—is so closely connected with the principal transaction as to form a part and parcel of it.  This cannot be done under the rule announced by Chief Justice Fuller.

The general rule that all prior negotiations are merged in

the written contract finally agreed upon and apparently complete and unambiguous, and that parol evidence is not admissible to add to or vary its terms, is well settled. Likewise as a general rule, parol testimony is not admissible to contradict or vary the terms of a written instrument, either by attempting to show prior negotiations or a contemporaneous oral agreement. The rule is not one of evidence merely, but strictly speaking one of substantive law. Elliott on Contracts, Com. Sup. 1913-1923 Sec. 1621.

The writing in the instant case upon its face is couched in such terms as to import a complete legal obligation without any uncertainty as to the object or extent of the engagement, and it is conclusively presumed that the whole engagement of the parties and the extent of the manner of their undertaking were reduced to writing. Greenleaf Evidence Sec. 275. We therefore find no error in the action of the court in rejecting this testimony.

A written contract may be modified or its terms altered by a subsequent valid oral agreement, and this may be shown in a proper case. As a rule a consideration must be shown. *Johnson* v. *Burnham*, 120 Me. 491; 115 Atl. 261. In the present case the trial court permitted evidence to go to the jury tending to prove a subsequent agreement of the plaintiff with the defendant concerning an interest in surgical fees which might be thereafter earned under the partnership arrangement then existing between Drs. Hatfield, Rader, Taylor and said defendant. It is urged by defendant that there was no consideration for this oral agreement. If the consideration named in the written instrument does not form a consideration for the subsequent oral agreement, the labor that the plaintiff would perform in order to share in said surgical fees would be a consideration. This testimony was properly admitted.

From the testimony of both the plaintiff and the defendant we do not think that the plaintiff is entitled to recover for the 150 shares of stock which the defendant failed to deliver to him. It appears that the plaintiff failed to comply with the terms of the written contract by which he agreed to pay to the Union Savings and Trust Company, of Cincin-

nati, Ohio, fifteen thousand dollars or assume the payment, that the defendant owed this bank and have him relieved from further liability on that note, and the proof shows that the plaintiff has failed to pay or assume the payment of the note mentioned, and has failed to have the defendant relieved from liability on it. The defendant says he is ready and willing to deliver the stock to the plaintiff when he shall have complied with the written contract by paying the note, or what is equivalent thereto having the defendant relieved from the payment of same.

> "The rule is strict and inflexible that a plaintiff has no right of action for damages for breach of contract, where he himself has breached the contract." *Johnson* v. *Hoffman,* 130 Va. 335.

The trial court excluded all of the evidence of the plaintiff except evidence relating to whether or not the plaintiff was entitled to recover upon the question of surgical fees and the defendant proceeded to try the case on that issue alone. For this breach of the contract the jury found for the plaintiff the sum of $2,750.13, and in addition thereto $40,000.00 as damages. Now the whole of the evidence touching damages, other than damages caused by the breach of the contract in reference to surgical fees as above stated, having been stricken out by the court, and the plaintiff not having expressed his willingness to remit from the verdict the $40,000.00 found by the jury as damages, the trial court without further reason acted properly in setting aside the verdict.

Both the plaintiff and defendant assign as error the giving and refusing of certain instructions.

Instruction No. 1 given by the court for the plaintiff was improper for the reason that it covers the entire contract as claimed by the plaintiff and directs the jury to find damages for the depreciation of the value of the stock purchased under the written contract caused by the withdrawal of the Kessler-Hatfield Hospital and Training School from the Greater Huntington Hospital Association. There is no evidence in the record upon which to base this instruction, and if there

had been it was stricken from the consideration of the jury by the court.

Instruction No. 2 offered by the plaintiff was properly refused. This instruction covers practically the same ground as is covered by Instruction No. 1, and directs the jury to find for the depreciation of the value of the stock of the Kessler-Hatfield Hospital and Training School caused by the defendant in his failure to comply with the agreement in reference to the formation and organization of a clinic, and his withdrawal from the partnership arrangement, by which the defendant sold ¾ of his interest in said partnership to the plaintiff, and by reason of the fact that the defendant brought about the withdrawal of the Kessler-Hatfield Hospital and Training School from the Greater Huntington Hospital Association.

The plaintiff's instruction No. 3 was properly refused for the reason that it is based on the failure of the defendant to deliver 150 shares of the capital stock of the Kessler-Hatfield Hospital and Training School to the plaintiff as contemplated by the written contract, and directs the jury to find for the plaintiff the value of the 150 shares of stock when there is no evidence of the value of the stock, all the evidence upon this breach of the contract having been excluded by the court.

It is clearly apparent from the face of this record that the case must be retried. We therefore do not deem it necessary to go further into the question of the instructions offered upon the part of the defendant for the reason that they are chiefly based upon the evidence which was permitted to go to the jury on the trial.

For reasons assigned the decision of the lower court in setting aside the verdict and granting to plaintiff a new trial is affirmed.

*Affirmed.*