J. HOWARD ANDERSON *v.* MOSES HYMAN *et al.*

(No. 7373)

Submitted May 10, 1933.   Decided June 6, 1933.

*Strother, Sale, Curd & St. Clair,* for plaintiff in error.
*Zeb H. Herndon,* and *Harman & Howard,* for defendant in error Sam Polan.

KENNA, JUDGE:

On August 1, 1928, the plaintiff, J. Howard Anderson, bought from Moses Hyman a certain property in the town of Welch.   On that day, Hyman and wife executed a deed containing a general warranty of title for the property to Anderson.   The consideration was $30,000.00, $12,500.00 of which was paid by the transfer of certain stock to Hyman and the balance of $17,500.00 was represented by the note of Anderson, pay-

able to Hyman at the First National Bank of Welch in 120 days. A vendor's lien was reserved to secure the unpaid purchase money evidenced by the note. At the time of the conveyance there was a previous vendor's lien outstanding in favor of Welch Development Company in the sum of $20,-000.00. The note that this lien secured had been transferred to the Bank of Bramwell. The bank holding this note later enforced the lien and evicted Anderson from the property. Anderson then brought an action in assumpsit against defendants, Moses Hyman and Sam Polan, in the circuit court of McDowell County and went to trial on an amended declaration containing the common counts and two special counts. Special count No. 1 alleges that Hyman and Polan, partners trading under the firm name of McDowell Building, took title to the property sold in the name of Hyman, but in reality for the partnership; that they undertook to sell the property to Anderson for $30,000.00; that at the time the transaction was closed, they fraudulently undertook, promised and agreed to and with Anderson, Hyman acting for the partnership, to apply the purchase price paid by Anderson to the discharge of the prior lien of $20,000.00, not intending to keep or perform that promise; that thereafter they did fail to keep and perform it in consequence of which Anderson lost the property and was dispossessed to his damage of $30,000.00. The second special count alleges the partnership, a deed of general warranty made by Hyman for himself and Polan, dispossession of plaintiff and consequent damages, and lays the recovery as in covenant. An itemized account is filed with the declaration showing the full payment of $30,000.00 on the part of Anderson. To this declaration, Polan demurred, assigning grounds.

The demurrer was overruled and a trial resulted in a directed verdict for defendant Polan. Hyman did not defend and there was a verdict and judgment against him for $30,-000.00. Anderson prosecutes this writ of error.

There can be no demurrer to the common counts in assumpsit. The demurrer to the first special count should have been sustained because it is apparent that the promise allegedly made contemporaneously with the deed was oral. Such a promise could not be proven. *Hurst* v. *Hurst,* 7 W. Va. 339; *Johnston's Adm'r.* v. *Mendenhall,* 9 W. Va. 112, 119; *Howell*

v. *Behler*, 41 W. Va. 610, 24 S. E. 646; *Knowlton* v. *Campbell*, 48 W. Va. 294, 37 S. E. 581; *Beuna Vista Co.* v. *Billmyer*, 48 W. Va. 382, 388, 37 S. E. 583; *Richardson* v. *McConaughey*, 55 W. Va. 546, 47 S. E. 287. The question is properly raised on demurrer. *Brown* v. *Cabell*, 111 W. Va. 186, 161 S. E. 438. We do not regard the allegations of fraud in this declaration at law sufficient to avoid the effect of this rule.

The second special count, for the reasons hereinafter stated, we think, is good, and the court below correctly overruled the demurrer to it.

On the basis of what has just been stated, the recovery of the plaintiff herein as to Sam Polan is restricted both as to allegation and proof to the second special count of his declaration. This count proceeds to allege a general partnership between Hyman and Polan for the purpose of trading and dealing in real estate, and it further alleges that this specific transaction was a matter of special agreement and authorization on the part of Polan; that Polan was in reality a one-half owner in the property and Hyman's partner in the transaction, which was for the purpose of purchase and sale and that the whole transaction, including the deed of general warranty, was made with the knowledge of and by authorization from Polan; that Polan, with full knowledge, ratified it and accepted his share of its full benefits; that the plaintiff has kept and performed all of the covenants contained in the deed on his part; but that he was dispossessed under a title paramount by virtue of the foreclosure of the pre-existing lien to his consequent damage in the full purchase price of $30,000.00.

An action on a covenant may be maintained in assumpsit. *Hamrick* v. *Nutter*, 93 W. Va. 115, 116 S. E. 75. There is no doubt as to the breach of this covenant. The remaining question is whether the covenant entered into formerly by Hyman could bind Polan.

Hyman testified fully concerning the relationship between him and Polan. They were general partners. Furthermore, according to the uncontradicted testimony of Hyman who was called as a witness by plaintiff (Polan did not testify) they were partners specifically in this transaction and, pursuant to agreement, had purchased this property for the purpose of resale. This agreement, according to Hyman, included even the

discussion of the possibility of re-selling the property to the plaintiff Anderson. Hyman testified that he and Polan together provided the cash payment of $3,000.00 when they purchased the property by discounting the note of the Welch Development Company with the signatures of each of them as indorsers. According to Hyman, the title was taken in his name with the knowledge and authority of Polan. When it came to the negotiations with Anderson, Hyman testified that Polan was fully informed; that the terms and conditions of the sale were discussed with him in detail, and that the form of conveyance was approved by Polan, including the general warranty. He further testified that the consideration was used in the general partnership affairs of himself and Polan and for their joint benefit. This testimony is all uncontradicted. We think, therefore, that the partnership of Hyman with Polan, generally and in this particular transaction, was certainly *prima facie* established by the proof of the plaintiff.

Assuming, therefore, that there was a partnership between Hyman and Polan, what of its legal effect? Partners ordinarily cannot convey realty so as to bind their co-partners. *Ruffner* v. *McConnell*, 17 Ill. 212; *Dillon* v. *Brown*, 77 Mass. (11 Gray) 179. See *Cady* v. *Shepherd*, 28 Mass. (11 Pick.) 400, 22 Am. Dec. 379. However, where there is express authorization, a partner may convey property belonging to the firm so as to bind his co-partners by the grant. *Cherry Lake Turpentine Co.* v. *Lanier Armstrong Co.*, 10 Ga. App. 339, 73 S. E. 610. While no cases have been found directly in point on the question of a dormant partner's obligation on the authorized warranty of a co-partner, we are of opinion that it is a necessary corollary to the rule that one authorized partner may convey for the firm, binding all, that if all are bound by the act of the one, necessarily all are not only bound by the grant itself, but by all of the authorized incidents of the grant, including the covenants. But this authority was not given in writing. Nevertheless, both allegation and proof show that Polan, with full knowledge, took the benefit of Hyman's act and participated in the consideration therefor. This was ratification equally binding with authorization. *Holbrook* v. *Chamberlin*, 116 Mass. 155; *McGahan* v. *Bank*, 156 U. S. 218, 39 L. Ed. 403.

On the basis of the foregoing, we are of opinion that it was shown by plaintiff's evidence that there was in fact a partnership between Hyman and Polan for the purchase of this property and for its re-sale; that Polan was familiar with and authorized the sale to Anderson, including the execution of the deed containing general warranty of title; that he participated in and benefited from the proceeds of the transaction, and thus ratified what his partner, Hyman, had done. This all appears *prima facie* from the plaintiff's proof, and we are of opinion that that proof entitled the plaintiff to go to the jury on the second special count of his amended declaration.

Therefore, the judgment of the trial court must be reversed and a new trial awarded as to Polan in accordance with the views herein expressed.

*Reversed; new trial awarded as to defendant Polan; remanded.*