W. T. O'FARRELL, *Admr. v.* VIRGINIA PUBLIC SERVICE COMPANY

(No. 7911)

Submitted October 24, 1934.  Decided November 13, 1934.

*Jas. S. Easley, G. Gilmer Easley* and *J. H. White,* for plaintiff in error.
*Jarrett & Wilson,* for defendant in error.

HATCHER, JUDGE:

This is an action to recover damages for breach of an alleged oral promise made to J. J. O'Farrell by Virginia Public Service Company in connection with a written contract between them for the sale and purchase of certain property. O'Farrell obtained a verdict and a judgment for $11,000.00 against the company and it prosecutes error. He died pending this litigation, but he will be referred to herein as plaintiff.

The written contract consists of a formal letter dated June 2, 1928, from the defendant to the plaintiff and his confirmation of the terms in the letter. The parol agreement relates to some preferred stock which is mentioned in the letter. The parts of the letter pertinent to this controversy follow:

> "Confirming our verbal understanding of this date, we will pay you Fifty Seven Thousand, Five Hundred Dollars ($57,500.00), one half in cash and the rest in our 6% Series, preferred stock, at par, for your franchise, distribution system, poles, wires, brackets insulators, stock and all other property real and personal, owned and used by you and/or your association, or the Mountain Milling Company, Inc. in connection with your business of distributing and selling electric current in the town of White Sulphur Springs in Greenbrier County, West Virginia, upon the following conditions:
>> (The conditions which follow are five in number and have no reference whatever to the preferred stock.)
> * * * This letter is written in duplicate, and if it is in accordance with your understanding, please endorse the note at the bottom hereof and return one copy to us, and it will constitute a contract between us."

The plaintiff with the consent of defendant inserted in the letter another condition which also did not relate to the preferred stock, and then signed the following "note" (confirmation): "The above is in accordance

with my understanding and I agree thereto, this 2nd day of June, 1928." The alleged parol promise of defendant was that it would pay him cash for the preferred stock at par, upon demand.

On June 16, 1928, plaintiff delivered to defendant a deed for the property referred to in the contract, and defendant paid to him $28,000.00 in cash. A few days later defendant delivered to him certificates for 287 shares of its preferred stock.

In September, 1931, plaintiff secured a loan of $3,-000.00 from defendant, and deposited a certificate for 50 shares of the preferred stock with it for security. In October and November, 1931, a bank which held 87 shares of the stock as security on a loan to plaintiff, at his direction requested defendant to redeem the 87 shares. Defendant, instead, resold them at par and accounted to the plaintiff for the full sum, less $1.50 per share re-sale charges (and four cents a share for a transfer tax), to which charges plaintiff acceded. In the spring of 1932, plaintiff sought to have defendant redeem the 200 shares of stock he yet owned, and upon its refusal, brought this action in the fall of the same year for the difference between the par and market value of his stock.

The plaintiff testified that he informed Lewis Payne, the representative of the defendant, on both June 2nd and June 16, 1928, that he (plaintiff) could not "handle" the stock unless he could get his money out of it at any time; and that he agreed to accept the stock only upon the express promise of Payne, given on each date, that defendant would pay him (plaintiff) par for the stock upon demand, on ten days notice. The trial court struck out plaintiff's testimony as to the promise on June 2nd, but retained the evidence as to the promise on June 16th. Payne denied the promise, and stated in effect that he merely said to plaintiff that defendant maintained a department for the re-sale of its stock, and that the department would sell plaintiff's stock at any time, etc. In view of the jury's finding, we will treat the promise alleged by plaintiff as factually made.

If a contract seems complete on its face, "the presumption is that it contains the whole of the agreement, and this presumption generally is conclusive." *Braude* v. *Co.*, 87 W. Va. 763, 106 S. E. 52. This Court went even further in *Jones* v. *Kessler*, 98 W. Va. 1, 126 S. E. 344, saying that the presumption was *conclusive.* The details specified and the number of conditions enumerated in the proposed draft of the contract herein (the letter), and the conduct of plaintiff in adding to the draft another condition in order that the writing *should accord with his understanding,* all imply completeness. *Expressio unius est exclusio alterius.* *United Co.* v. *Broadnax*, 136 Fed. 351, 354. Moreover, the written contract prescribes a block of preferred stock, which from the express condition printed on the stock certificates, was redeemable "in the discretion of the board of directors." That condition became a component part of the contract. The parol stipulation would change (vary) that condition to one payable upon *the demand of the plaintiff* on ten days notice. The writing is plain and without ambiguity. Neither fraud, mistake nor surprise is charged by the plaintiff. We are committed in the most positive terms to the doctrine that such an instrument cannot be varied by a contemporaneous oral promise relating to the same subject matter. *Crislip* v. *Cain,* 19 W. Va. 438, 440-1; *Coal Co.* v. *Electric Works,* 94 W. Va. 300, 118 S. E. 512; *Jones* v. *Kessler, supra; Anderson* v. *Hyman,* 113 W. Va. 760, 169 S. E. 741. Accord: *Seitz* v. *Brewer's Co.,* 141 U. S. 510, 517, 35 L. Ed. 837; Restatement, Contracts, sec. 237.

Counsel for appellee rely mainly, however, on the alleged assurance given plaintiff by the defendant on June 16th. They take the following position:

> "Had the defendant's manager, Payne, on June 16th, 1928, refused to renew his promise to plaintiff, we must assume that plaintiff would have declined to go forward in carrying out his agreement to convey his property and that of Mountain Milling Company to defendant. * * * Had defendant's manager, Mr. Payne, on June

> 16th, 1928, told plaintiff that he would not make such promise to cash in the stock, but would hold plaintiff to his written contract of June 2nd, then plaintiff could have stood on his equitable rights and could have at least litigated with defendant the question of whether he could be forced to convey his property to defendant under a contract procured from him by these representations of Mr. Payne which were not incorporated therein. By a re-assurance, however, on June 16th, plaintiff went forward and took the stock."

It is beyond question that the undertaking of a party to a written contract may be enlarged by a subsequent oral agreement. *Summit Coal Co.* v. *Fuel Co.,* 99 W. Va. 11, 18-19, 128 S. E. 298; 13 C. J. subject Contracts, sec. 604. A consideration, however, is requisite to support the enlargement. *Jones* v. *Kessler, supra;* 6 R. C. L., subject Contracts, sec. 301. Plaintiff's performance of the contract of June 2nd—a performance to which he was already obligated—was the only consideration for defendant's agreement on June 16th to pay cash for the preferred stock on demand. In 1830, the Supreme Court of Massachusetts held that such a consideration was sufficient at law. See *Munroe* v. *Perkins,* 20 Am. Dec. 475, 479. That decision has been followed by the Supreme Courts of New York, Michigan, Vermont, Texas, Washington and perhaps a few other states. Jones presents that rule in his Commentaries on Evidence (2d Ed.), sec. 1502. The rule is advocated in 6 R. C. L., *supra,* sec. 302, but is condemned in section 73 of the same authority. The rule was rejected in England in an early case and has never since been recognized there. 8 Harvard L. Rev. 27-8; Anson on Contracts (2d Am. Ed.), page 106 (*82). The rule is opposed by "the great weight of authority" in the United States. Williston on Contracts, secs. 130 and 131a. The decisions of this Court are part of that weight. "The doing by one of that which he is already bound to do is not a valuable consideration for a promise made to him, since it gives to the promisor nothing more than that to which the latter

is already entitled." *Thomas* v. *Mott,* 74 W. Va. 493, 82 S. E. 325. Accord: *Vance* v. *Ellison,* 76 W. Va. 592, 85 S. E. 776; *Whan* v. *Gas Co.,* 81 W. Va. 338, 343-4, 94 S. E. 365; *Cole* v. *George,* 86 W. Va. 346, 103 S. E. 201; *Brown* v. *Ry. Co.,* 92 W. Va. 111, 114 S. E. 457. The case last cited is very specific, holding: "Where the parties to a contract seek to modify it by a subsequent agreement by which one of the parties assumes no obligations, or releases nothing, the promises by the other are without consideration and the original agreement is not affected." Accord: 13 C. J., subject Contracts, secs. 207-8-9; 17 Harvard L. Rev. 71.

Counsel also contend that the conduct and the correspondence of defendant in regard to the 87 shares of stock for which plaintiff was paid, in connection with defendant's verbal promise of June 16th, constitute a waiver of defendant's right to stand on the written contract. The expressions in defendant's letters most favorable to plaintiff ("send the certificate * * * thru to our treasurer for cancellation" and reference to "the reverting of this stock") relate expressly to the 87 shares, and can be taken only as a waiver *pro tanto.*

Under this view of the case comment on other errors alleged is unnecessary. The judgment herein is reversed, the verdict set aside, and a new trial awarded the defendant.

*Judgment reversed; verdict set aside;*
*new trial awarded.*