P. G. Ligon *et al v.* Godfrey L. Cabot, Inc.

(No. 9137)

Submitted April 29, 1941. Decided May 27, 1941.

*Price, Smith & Spilman, Lively & Lively, S. P. Bell* and *Fred C. Fernald,* for plaintiff in error.

*Rummel, Blagg & Stone* and *Harper & Baker,* for defendants in error.

KENNA, PRESIDENT:

This action in assumpsit was brought in the Circuit Court of Roane County by P. G. Ligon, Grover C. Ligon, Leonard M. Gaines and Walter F. Wilson, partners, doing business under the firm name and style of Ligon & Ligon, against Godfrey L. Cabot, Inc., for the purpose of recovering the sum of one hundred twenty-five thousand dollars alleged to be due the plaintiffs by reason of the failure of the defendant to fully perform the terms of a contract entered into by the contractor and the company (those being the terms used in the contract, referring to

the plaintiffs as "contractor" and the defendant as "company", a method that will be followed herein) for the construction of a gas pipeline by the contractor for the company from the latter's well known as the Good well near Sissonville in Kanawha County, to its compressor station at a point known as Big Bend on the Little Kanawha River in Calhoun County, a distance then approximated at forty-five miles. The amended declaration on which the case was submitted contains six counts, and occupies sixty-five pages of the printed record. Upon overruling the defendant's demurrer thereto, the trial judge certified to this Court the legal questions which arose in that manner, and upon this Court's declining to docket the certification, proceeded to submit the issues which arose upon the defendant's plea of not guilty, accompanied by written specifications of defense, to a jury, the trial lasting from October 2, 1939, through October 18th, when a verdict against the defendant for the sum of eighty-five thousand dollars was returned. The company's motion to set aside the verdict was argued and submitted January 29, 1940, overruled June 10, 1940, and judgment entered on that day. A writ of error and supersedeas was granted by this Court September 16, 1940.

The assignments of error relate to the overruling of the defendant's demurrer to the declaration and to the admission of parol evidence in order to alter the terms of the contract in writing between the parties.

The defendant's demurrer to the plaintiff's declaration, we believe, was rightly overruled. The declaration is in six counts, including one based upon *indebitatus assumpsit* and one upon the *quantum meruit,* the remaining counts being special counts. The defendant craved oyer of the contract declared on and of the specifications included in its terms, so that the demurrer covered a pleading which now occupies ninety pages of the printed record before us. The allegations were largely an attempt to aver the manner in which the writing declared upon had been supplemented by oral understandings, and due to that attempt, a large percentage of its allegations in the final outcome must be regarded as surplusage. But upon

demurrer, it was doubtless extremely difficult to determine the extent to which the lengthy declaration contained surplusage or allegations of inadmissible testimony, and the extent to which its allegations might be held to supplement the written evidence of the understanding between the parties, and the demurrant being required to point out the manner in which the pleading demurred to is insufficient, we cannot say that the trial judge erred in not sustaining the demurrer.

We realize that the finding of this Court in the case of *Leckie* v. *Bray*, 91 W. Va. 456, 460, 113 S. E. 746, to the effect that a demurrer was properly sustained when the allegations of the declaration predicated the sought recovery upon a writing coupled with an oral understanding is in apparent conflict with our present holding. The decision in the *Leckie* case was based upon the exclusion of parol to add to the terms of a written instrument. At the time the opinion in that case was prepared, the discussion in *Clark* v. *Emery*, 58 W. Va. 637, 640, 52 S. E. 770, 5 L. R. A. (N. S.) 503, differed somewhat from its reasoning, based as it was upon a rigid adherence to the parol-evidence rule, and in that respect, differing from our later cases, such as *Wheeling* v. *Water Company*, 115 W. Va. 353, 357, 176 S. E. 234. We prefer to recognize the rule of integration, properly applied, and for that reason, are of the opinion that the trial court properly overruled the demurrer to the declaration now before us.

The governing point in this controversy, it is agreed, is whether the contract (called by plaintiffs, a memorandum) entered into provided for the laying of a pipeline in accord with the method of "ridge construction", or did not, but left the company free to follow what is known in the oil and gas business, as "straight line construction." The decision of that question turns upon whether the method of construction was sufficiently covered by a writing executed by the parties on the third day of August, 1937, or whether the location of the pipeline and the method of its construction was not dealt with in that writing, and for that reason, the contract between the parties could be supplemented by a verbal understanding

reached prior to and contemporaneously with the execution of the paper. . Should the conclusion be reached that the writing is insufficient and not controlling upon the question at issue, it is then contended by the company, defendant below, that the preponderance of the testimony does not sustain the contractor's, plaintiff below, theory that the contract covered ridge construction only, and for that reason that the trial court erred in declining to set the verdict aside.

It would seem that the terms "ridge construction" and "straight line construction" are both well known to those engaged in the business of transporting oil and gas, and to those engaged in the business of building pipelines for that purpose. There are many of what may be called "trade terms" contained in this voluminous record and much testimony relating to their definitions, so that it is practically impossible in a relatively brief, opinion to attempt their use and clarification. However, that may be attempted to the extent of stating that "ridge construction" follows the line of the ridges which roughly parallel the pipeline's general course of direction, and, in a hilly country, follows a level course much more nearly than does the straight line method, and that due to that fact, machinery in digging the ditch, transporting the pipe and in sundry other ways can be used to a far greater advantage and for a far larger percentage of the work than it can in the other method, which, by comparison, follows a straight line regardless of the terrain and the contour of the land. The claim of the plaintiff below rests upon the increased cost of performance entailed in following a straight line method which, according to its contention, was a departure from the terms of the writing supplemented by a distinct verbal understanding. On the other hand, the company contends that the method of construction through the counties of Kanawha, Jackson, Roane and Calhoun is obviously an essential factor, involving, as plaintiff's testimony shows, a very substantially different expenditure by the contractor on the one hand, and by the company on the other in the matter of acquiring right-of-way, purchasing pipe, etc., and that on account of its

outstanding importance and the plain language of the written understanding and the specifications expressly made a part thereof, the two papers occupying twenty-six pages of the printed record, the trial court erred in admitting oral testimony to add to the terms of a written instrument an understanding in direct conflict with what was already embodied in and fully covered thereby.

The pertinent clauses of the writing of August 3, 1937, and the specifications made a part thereof, are to be found in the first paragraph of the contract, and fifth paragraph of the specifications, which are as follows:

> "1. The Contractor will build and install a gas pipe line beginning at a point in Kanawha County, West Virginia, near the village of Sissonville to a point in Calhoun County near Big Bend, substantially along the route shown by the map attached hereto and made a part of this agreement."
>
> "5. LOCATION OF THE WORK. The general location of the work as shown on the Company's maps attached hereto and is situated between line terminals located in Kanawha, Jackson, Roane and Calhoun Counties. The line will follow the route on the rights of way to be staked by the Company engineers. If, for any reason, the routing of the line should be changed from that indicated on the maps, the unit prices submitted by the Contractor shall govern in making payment. The company reserves the right to make any changes in routing made necessary by right of way or other difficulties, and such changes shall in no manner alter the terms of these specifications or the contract. No changes are to be made in the routing by the Contractor for any reason without the approval of the Company."

It is virtually admitted that the map attached to the contract, a topographical quadrangle prepared by the Federal Government upon which the location was superimposed by a straight line, though not attached to the writing when executed by the contractor in the City of Baltimore, was attached to the specifications upon which their bid was entered and to the executed copy with which they were supplied when photostatic copies could

be procured. In this connection, the company points out an admonition contained in the specifications, immediately preceding paragraph five, cautioning the contractor to satisfy itself "as to the character of the soil, contour of the country, location of waterways, railroad and highway crossings, and all other conditions necessary to be considered in determining the nature of the work to be performed hereunder." The contractor responds by saying that such a warning would be applicable regardless of the method of construction. In the main, the contractor takes the same position concerning section five of the specifications.

The so-called parol-evidence rule, which is variously stated, to the effect that the terms of a written instrument shall not be contradicted nor altered by proving an oral understanding entered into prior to or contemporaneously with the effective execution of a contract in writing, is predicated upon the logical assumption that the more formal and solemn expression of the contract's terms embraces and absorbs the result of all negotiations and communications between the parties leading up to its execution. It will be observed from that general statement of the rule that it is confined to the terms of the writing, and includes only what its wording indicates clearly was a meeting of minds between the parties. A writing is not to be rigidly construed in order to restrict the scope of its terms unless required by public policy or some other definitely established rule of construction. The conflict, which, in our opinion, has arisen in the decided cases involving the rule in question has been occasioned by writers and courts differing as to whether nice logical discriminations were to govern its application, or the orderly dispatch of business was to limit their use.

Certain testimony is adduced by the plaintiff in order to show that the terms of the written contract do not fully cover the subject matter dealt with upon its face and to perform the double duty of supplying the want. This approach would place writings and parol on a parity, save for the practical preference a jury or a court might, upon a finding of fact, accord the physical preservation

of an understanding. If the terms of the writing do not show incompleteness, not to be confused with a latent ambiguity, on its face, to permit it to be both shown and the want supplied by parol, we think, is to reason in an extremely vicious circle.

To undertake a full discussion of the rule comparatively recently designated as the "rule of integration" and its effect upon the matters now before us, would inject unnecessary intricacies that we regard as having no direct relation to the basis of decision. However, we call attention to a full monographic treatment and annotation in 70 A. L. R. 752, and to the citation therein of *Braude & McDonnell* v. *Cohen Co.* (1921), 87 W. Va. 763, 106 S. E. 52, the second syllabus of which follows:

> "Though no written contract, which does not in terms state that it contains the whole agreement, precludes the possible supposition of additional parol clauses not inconsistent therewith, yet, if, upon inspection and study of the writing, it appears to contain the full engagement of the parties and to define the object and measure the extent of such engagement, the presumption is that it contains the whole of the agreement, and this presumption generally is conclusive."

The *Braude* case is quoted and cited with approval in *O'Farrell* v. *Virginia Pub. Service Co.,* 115 W. Va. 502, 505, 177 S. E. 304, where attention is directed to the fact that the strictness of the rule excluding parol evidence to affect a writing is increased by this Court's holding in *Jones* v. *Kessler,* 98 W. Va. 1, 126 S. E. 344, to the effect that a writing is conclusively presumed to contain the entire agreement of the parties touching matters dealt with in it. Furthermore, the *Kessler* holding is noted with approval in the following later opinions of this Court: *Roberts* v. *Lykins,* 102 W. Va. 409, 413, 135 S. E. 388; *Donato* v. *Kimmons,* 104 W. Va. 200, 204, 139 S. E. 714; *Houchins* v. *Holcomb,* 106 W. Va. 79, 82, 144 S. E. 884. The *Kessler* case is followed in *Portland Cement Co.* v. *Whitmore Lumber Co.,* 108 W. Va. 226, 228, 150 S. E. 607. An iteration of the rule laid down in the *Kessler* case and

an exhaustive review of our West Virginia holdings under the parol-evidence rule will be found in *Central Trust Co. v. Virginia Trust Co.*, 120 W. Va. 23, 197 S. E. 12.

It will be seen from the foregoing cases that if the contract of August 3, 1937, is held to cover the type of construction sufficiently, including essential clarity, that parol evidence is not permitted to alter its terms.

It seems quite evident that the written contract, in order to control, is not required to adopt either "straight line" or the "ridge construction" method. In fact, it is doubtful whether either of those terms refers to a sufficiently settled method of construction upon which to base a decree of specific performance in an otherwise proper case. The contract of August 3, 1937, does not attempt to adopt either. After a Puritanical warning to the contractor to "watch his step", it proceeds in plain terms to confer upon the company the right to locate the route upon which the line is to be laid, first by flagging and finally by staking the location of the pipeline. The methods of flagging and staking the line, both of which were actually done by the company, are not under attack. In fact, the question as to the type of construction being followed was not made the subject of a written protest until October 8, 1937 (work having commenced August 9th), and then not seriously enough to cause the contractor to include approximation of additional cost in the bi-weekly estimates required by the contract, all of which were compiled by the contractor upon the agreed contract price.

We are of the opinion that to permit parol evidence to establish an alleged agreement as to the type of construction to be followed, would be to disintegrate the written understanding which is, as to that, the conclusive evidence of the contract between the parties.

Pursuing further the question of ambiguity, which we believe is already sufficiently covered, we perceive no patent, nor evidence of a latent, ambiguity. But if there were either, should it not, at least in a preliminary manner, be dealt with under the following provision of the contract of August 3, 1937?

"All of the work under this contract shall be done to the satisfaction of the Company inspector, who shall in all cases determine the amount, quality, acceptability and fitness of the work and materials which are to be paid for hereunder, and shall decide all questions which may arise as to the measurements of quantities and the fulfillment of this contract on the part of the Contractor, and shall determine all questions respecting the true construction or meaning of the plans and specification, and his determination and decision thereon shall be final and conclusive."

The disagreement was not submitted under the above stipulation.

Not that we think the matter enters into the determinative question, but simply in order to illustrate what might have been the controlling effect of the last quoted contractual provision, see the title Contracts, 12 Am. Jur. 898; and *Vaughan Construction Co.* v. *Virginian Railway Co.,* 86 W. Va. 440, 103 S. E. 293.

We believe that under the proper construction of the contract of August 3, 1937, the plaintiffs herein have established no right of recovery, and that the amount of its additional claim for extra expense occasioned by increasing the depth of the ditch, squaring its sides, grading it by hand, and leaving loose ends at the top of each hill, is probably covered by the provision of the contract allowing the company two hundred dollars a day by way of liquidated damages for delayed performance, and the tender of the amount due the contractor made by the defendant in the trial court.

For the foregoing reasons, the judgment of the Circuit Court of Roane County is reversed, the verdict set aside and the defendant company awarded a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*

ON PETITION TO REHEAR:

In the petition to rehear filed on behalf of the plaintiffs

it is contended that the next to the last paragraph of the opinion may be construed as placing some limit on the right to recover for what is termed "extra work" in the specifications. It was not so intended.