# CHARLESTON.

RYAN *et al. v.* NUCE *et als.*

Decided May 10, 1910.

1. EVIDENCE—*Parol Evidence—Contradicting Written Contract.*

   A contract when reduced to writing becomes the repository of the common intentions of the parties, all prior or cotemporaneous negotiations becoming merged therein, and it can not be contradicted by extrinsic evidence.

2. CANCELLATION OF INSTRUMENTS—*Pleading—Offer to Restore Benefits.*

   A bill to cancel a contract for fraud in its procurement should as a general rule allege plaintiff's willingness and ability to do so, and tender to defendants all property and rights derived under the contract.

3. SAME—*Fraudulent Representations—Pleading.*

   As a general rule a bill to cancel a contract for fraud in its procurement should specifically allege the facts constituting the fraud; and where false representations are relied on such representations must not only be averred, but it must also be alleged that they were in fact false, were relied on by plaintiff and that plaintiff did not know the falsity thereof, and was injured thereby.

4. EQUITY—*Amendment to Bill—Dismissal.*

　　Where a good case for relief is shown by the evidence but the facts are not sufficiently pleaded in the bill, the court should not dismiss the bill without first giving plaintiff an opportunity to amend.

Appeal from Circuit Court, Monongalia County.

Bill by Ross F. Ryan and others against David C. Nuce and others. Decree for defendants, and plaintiffs appeal.

*Reversed and Remanded.*

*Lazelle & Stewart* and *M. E. Gorman,* for appellants.

*C. C. Rose,* for appellees.

MILLER, JUDGE:

Ross F. and Rebecca Ryan, by their bill seek cancellation and annulment of a contract, made December 7, 1906, with David C. Nuce, whereby, in consideration of one hundred and fifty dollars, evidenced by their three notes, each for fifty dollars, made payable to Nuce's wife, in four, eight and twelve months respectively, with interest, Nuce undertook to grant to plaintiffs "the sole and exclusive right to sell 'Lotts Steam Washer' in Monongalia county, W. Va., during the life of the patent and all improvements thereon, and to purchase same at the regular wholesale price of $5.00, $6.00 and $8.00 each from the Chicago Hardware Foundry Company, North Chicago, Illinois." The bill also prays that plaintiffs have judgment for the amount of their notes mentioned in the contract, and a note for $12.00 given Nuce by Ryan, growing out of the same transaction, on which latter note the bill alleges suit was then pending against Ryan before a justice, and that said suit be enjoined.

The ground of relief is that defendant, David C. Nuce, by fraud and fraudulent representations induced and procured plaintiffs to enter into said contract, and to execute said notes. The particular acts of fraud relied on, but we think not sufficiently pleaded, are, first, that before and at the time of entering into said contract, Nuce, to induce plaintiffs to enter into said contract, falsely and fraudulently represented to them that he owned the right to sell said washers in Preston county, and agreed to give plaintiffs the right to sell in a certain part

of that county also, but that after plaintiffs had sold some machines there and ordered them shipped from Chicago, to fill these orders, they learned by letter, alleged to be exhibited with the bill, but not found in the record, that Nuce did not own the right to sell said washers in Preston county, and that such right was owned by other parties; second, that as a further inducement to plaintiffs to enter into said contract said Nuce also falsely and fraudulently represented to them that he had procured four certain contracts in writing with other persons for the sale and purchase of said washers, which he exhibited, and agreed to and did turn over to plaintiffs, and which he falsely and fraudulently represented were as good as the money, and that all that was necessary for them to do was to deliver the washers and receive the money; but they allege that on presentation of said contracts to the parties whose names were signed thereto, three of them, Anderson, Brushel and Mundell pronounced them forgeries, and each refused to take the washers; third, that as another inducement to enter into said contract said Nuce gave plaintiffs the names of twelve prospective buyers, representing to them that he had talked to all, and to all of them washers could be sold, but they charge that a part of said prospective purchasers when seen by them represented that they had not seen Nuce, nor talked to him on the subject; that to one of them, Otto Sigwart, Nuce, after the contract with plaintiffs, had sold a machine and himself had collected the money therefor.

With respect to said $12.00 note it is alleged that plaintiff Ross F. Ryan was induced to execute said note to said David C. Nuce by the false representation of said Nuce, shortly after ordering twelve machines, that said hardware company required an advance of one dollar on each machine, which said Nuce loaned to plaintiff and took his note therefor.

Defendants did not demur to, but answered the bill. The answer we think substantially denies all the material allegations of the bill, except that allegation respecting the four contracts in writing for machines turned over to plaintiff, and if the facts in relation thereto were well pleaded in the bill we think plaintiffs on the evidence would be entitled to relief.

While the bill charges that these four contracts were turned

over to plaintiffs to induce them to enter into said contract, and that the persons whose names were signed thereto, denied signing the same, the bill does not distinctly allege that these persons did not in fact sign said contracts, or that the alleged representations of the defendant Nuce were false, or that plaintiffs were at the time of entering into said contract ignorant of the facts, and relied on the false representations of said Nuce. The same general criticism will apply to other allegations of the bill relied on, one of which, however, that relating to the right to sell machines in Preston county, we do not think presents good ground for the relief. The right to sell in Preston county is not covered by the contract. Nuce denies that he sold or proposed to sell that county or any part of it. Plaintiffs admit the subject was discussed prior to the execution of the contract, and that he knew it was not covered by contract before he signed it. The contract having been afterwards reduced to writing became the repository of the common intentions, and all prior or co-temporaneous negotiations became merged into it, and it can not now be contradicted by extrinsic evidence. *Home Gas. Co.* v. *Window Glass Co.,* 63 W. Va. 266 (61 S. E. 329); Page on Cont., section 1189.

A question presented by the evidence, but not specifically covered by the pleadings, is whether defendant Nuce did not undertake to sell plaintiff what he had no right to sell him, namely, the exclusive right to sell in Monongalia county *"during the life of the patent, and all improvements thereon."* He exhibits with his answer his contract with the patentee and manufacturer. As we now see it his contract was a mere agency, authorizes him to sell and to appoint sub-agents, and on whose sales he was to have a commission. This contract by its terms, however, if certain conditions therein were broken, was terminable at the end of a year. Where then did Nuce get his right to sell plaintiffs the exclusive right to sell during the life of the patent and all improvements thereon? We do not decide the question but in view of the disposition we shall make of the case we suggest it in furtherance of the ends of justice, and to avoid unnecessary litigation.

The bill is also defective we think in failing to tender to defendant Nuce all the property and benefits derived under

the contract, particularly pay for the washer and wringer previously purchased, the contract for 'which was surrendered to them at the time the contract they ask to have cancelled was made. The evidence of Ryan shows that he is willing on cancellation of his contract and notes to make proper restitution to defendant, but the bill does not allege this as we think it should. Hogg's Eq. Prin., section 60; *Worthington* v. *Collins*, 39 W. Va. 406; *Christian* v. *Vance*, 41 W. Va. 754; *Engeman* v. *Taylor*, 46 W. Va. 669, 713.

Generally a bill to cancel or rescind a written contract on the ground of fraud in its procurement must specifically allege the facts constituting the fraud. And the authorities hold that where false representations are relied on such representations must not only be averred, but it must also be averred that they were in fact false, were relied on by plaintiff and that plaintiff did not know of the falsity of the false representation, and was injured thereby. 1 Hogg Eq. Proc., section 115; *Burley* v. *Weller*, 14 W. Va. 264, 273. The bill in this case plainly does not come up to these requirements.

We take it from the saving in favor of plaintiffs in the decree appealed from, the court below dismissed the bill on the theory that there was adequate remedy at law, and that equity did not have jurisdiction to grant relief. If so we think the court was in error. Cancellation of instruments because of fraud is a specific ground of equitable jurisdiction. Hogg's Eq. Pr., section 48, and many cases cited. In *Nease* v. *Insurance Co.*, 32 W. Va. 283, Judge SNYDER says: "The well settled general rule, that equity has no jurisdiction, where there is a plain and adequate remedy at law, does not of itself afford a sufficient test of the jurisdiction. * * * It is safe to say however, that, where it is doubtful, 'whether or not there is an adequate and complete remedy at law, a court of equity will take jurisdiction." Hogg's Eq. Pr., section 3. To deny equity jurisdiction because of remedy at law the legal remedy must not be partial, but must be adequate, and as complete and efficacious as that given by equity. *Carney* v. *Barnes*, 56 W. Va. 581. We do not think plaintiffs' remedy at law as adequate and complete as in equity. Besides the contract there are their notes outstanding, which the evidence we think shows are simply in the bank for collection, and if still owned or under the con-

trol of defendants should along with the contract be surrendered and cancelled. A court of equity, all parties being before it, may in one suit dispose of all matters involved and put an end to litigation.

The bill being defective, however, in the particulars indicated, but the evidence showing good grounds for relief, should the court have dismissed the bill? We think not, without giving plaintiffs an opportunity to amend their bill so as to present by pleadings the case as proven. For such error we may reverse the decree, remand the cause, and give the plaintiffs leave to amend their bill. *Blue* v. *Campbell,* 57 W. Va. 34; *Lamb* v. *Laughlin,* 25 W. Va. 300; *Doonan* v. *Glynn,* 26 W. Va. 225, 228; *Gilchrist* v. *Oil Co.,* 21 W. Va. 115; *Van Winkle* v. *Blackford,* 33 W. Va. 573; *Rigg* v. *Parsons,* 29 W. Va. 522.

Being of opinion that a case calling for relief is shown in the evidence we will reverse the decree below and remand the cause, giving leave to plaintiffs to amend, if they desire to do so.

*Reversed and Remanded.*