## CHARLESTON.

THE MULTISEAM COAL & LAND COMPANY *et al. v.* CARY C. HINES *et al.*

(No. 6167)

Submitted October 23, 1928. Decided December 11, 1928.

514

*W. S. Wysong, Hoover & Hoover* and *Poffenbarger & Poffenbarger,* for appellants.
*Morton & Wooddell* and *Haymond & Fox,* for appellees.

WOODS, JUDGE:

In 1920 plaintiff McCoy secured an option in writing from defendant Hines on 8,768.49 acres of coal property in Webster county at the price of $40.00 per acre. Plaintiff Wysong was associated with McCoy in the enterprise. Ten thousand dollars was paid on the option, and in exercising his right to purchase, McCoy was required to pay an additional sum of $90,000.00 on or before April 1, 1921. In March, 1921, the date of this payment was postponed by a further written agreement to May 1, 1921. No payment was made, but negotiations continued. A number of written modifications of the original contract were made in September, 1921, and in September, 1922, which finally led up to and resulted in a conveyance of the coal property on September 20, 1922, by Hines of the first part and McCoy and Wysong of the second part to the Wysong-McCoy Coal & Land Company, a corporation, of the third part at the price of $70.00 per acre. The deed stated a consideration of $367,244.80 to Hines and $263,054.07 to Wysong and McCoy. The consideration to

Hines was paid and to be paid as follows: $80,000.00 in cash; $64,624.18 by the grantee assuming an equal amount of indebtedness of Hines, which was secured by liens on the property, and the balance of $222,620.62 in numerous installments evidenced by the notes of the company, endorsed by McCoy and Wysong. A vendor's lien was retained to secure the unpaid purchase money owing to Hines. A second vendor's lien was reserved to secure the unpaid purchase price owing to Wysong and McCoy, subject to priority of the lien in favor of Hines. The Wysong-McCoy Company assigned its rights to the plaintiff, Multiseam Coal & Land Company. Only a small proportion of the deferred payments having been paid, in 1924 Hines instituted a suit in the circuit court of Webster county for the purpose of enforcing the vendor's lien for his part of the unpaid purchase price. In September of that year he obtained a judgment against Wysong, McCoy and the Wysong-McCoy Coal & Land Company, for $240,860.58 and a decree for the sale of the land to satisfy the same. At the January term, 1925, the land was sold by a commissioner and purchased by Hines at the price of $150,000.00. The sale was confirmed at the same term of court. The judgment debtors made no appearance in the suit.

In January, 1927, this suit was instituted. The gravamen of the bill is that after McCoy and Wysong had paid $10,000.00 upon the option, being unable to meet the next payment provided for, under the original agreement, they told Hines, in April or May, 1921, that they would forfeit the amount already paid and surrender their rights in the property rather than attempt to go on with the deal, and that thereupon they were orally assured and promised by Hines at that time, and repeatedly afterwards, that if they would proceed with the project, and were unable to meet all of the payments, he would *take care of them* and the stockholders of their company in some way so that none of them would lose any money, presumably by conveying to Wysong and McCoy and the stockholders of the company a sufficient quantity of the land to compensate them for the payments made. This promise was denied by Hines, and, upon conflicting evidence, the circuit court dismissed plaintiff's bill.

Both McCoy and Wysong testify positively in support of their claim. Hines swears just as emphatically that he made no such representation to them. In the numerous written contracts entered into between these parties after the spring of 1921, the alleged promise is distinctly negatived by the recitals and covenants therein, with one exception. On September 12th, 1921, they entered into a contract which provided, among other things, that if Wysong and McCoy would pay $7,000.00 on a past due note *by the 14th instant,* and would make certain additional payments on or before specified dates, but were unable by sale of stock or otherwise to meet other payments, then on September 1, 1922, Hines would, ''in order to save the stock holders harmless, who have paid in on their subscription to the capital stock of said Company, convey to the Wysong-McCoy Coal & Land Company, at the price of $60.00 per acre, a sufficient acreage of the property sold you, to cover the amount of said payments and the former payments paid me.'' The $7,000.00 was not paid on September 14, 1921, and another contract was executed on September 17, 1921, which stated: ''This contract shall take the place of the contract between us dated September 12, 1921, which *contracts are* hereby cancelled and annulled.'' The contract of September 17th omitted entirely the promise to save the stockholders harmless, etc. Several hundred letters were exchanged discussing many details of the transactions between them, in which appear charges and recharges, criminations and recriminations, but in none of the letters is a statement from plaintiffs or an admission from Hines which sustains the present assertions of plaintiffs. The *''repeated assurance''* of Hines, as set forth in a letter to him from Wysong dated November 4, 1922, was ''that you would work fair and square with us.'' The promise of Hines in reply thereto is merely: ''When you gentlemen show some disposition to help yourselves, you will find that I will meet you half way.''

In September, 1922, Hines, McCoy and Wysong met in the office of Byrne, Littlepage & Lynn in the City of Charleston where they devoted some two days to discussing matters regarding the deal and preparing several contracts and the

deed of September 20, 1922. Kemp Littlepage, a member of the firm, testifies in relation thereto as follows:

"To the best of my recollection, what took place was, Mr. Wysong and Mr. McCoy were apparently unable to carry out the deal originally made and asked for consideration of Mr. Hines, who expressed to them his willingness to give them one more opportunity to carry out the deal provided he did not jeopardize any right he might have in it. He said that he did not want to work hardship upon them provided the deal could be carried out. * * * During the negotiations Mr. Wysong and Mr. McCoy both complained that they had paid a great deal of money and were apparently about to lose it all. They apparently recognized Mr. Hines' right, so far as the discussion in my presence was concerned, to have the property and to proceed as the former deal indicated his rights might be. * * * I did not understand that they understood they had equities at all. * * * It was the undertaking in the event that they did not comply with their then made promises,. made prior to the drafting and acceptance of these agreements, that Mr. Hines was to have the full benefit of payments made and his property, and so understood it, and I think I used it as 'as of the essence of the contract', if that means anything. I tried to set that forth that that was the undertaking of the whole thing,—to make final once and for all their opportunity to protect themselves or step out and let Mr. Hines have the property and the payments made; and I tried to so draw it."

In view of the facts that Hines is strongly supported in his contention by the testimony of Mr. Littlepage, an entirely disinterested witness, and that neither the letters nor the written contracts sustain the claim of plaintiffs, and in view of the general rule that when a contract is reduced to writing, the written instrument merges all prior and contemporaneous negotiations and becomes the repository of the common intentions of the parties, we cannot hold, as we would have to hold in order to grant the plaintiffs relief, that the finding of the circuit court is *plainly wrong*. *Ryan* v. *Nuce,* 67 W. Va. 485; *McBee* v. *Deusenberry,* 99 W. Va. 176.

518

Plaintiffs Wysong and McCoy further say that Hines represented to them at the time of the institution of suit to collect the balance of the purchase price, that he would not take a decree against them and that he would purchase the land at the commissioner's sale for the joint benefit of them and himself. They further state that because of these and similar representations by Hines they were induced to forego their right to defend the suit. Hines denies making such representations, but states, "I told them that I would take a decree against them, but that I would look to the property for my money." In the several years which have intervened since he recovered his judgment, he has shown no inclination to violate his promise. He has looked only to the land for his money. His attitude as well as the law of equitable estoppel operate to preclude him from enforcing the judgment against either of them.

Plaintiffs also charge the defendant with failure to allow certain credits on the deferred purchase price of the coal property before he took his decree. They are not injured if the defendant is precluded from enforcing the judgment against them. Besides, the defendant made a full disclosure of his dealings with the plaintiffs which the circuit court accepted. Again we cannot say that the lower court is wrong.

The decree of the lower court is accordingly affirmed.

*Affirmed.*