S. C. BALLENGEE *et al. v.* BECKLEY COAL & SUPPLY COMPANY

(No. 6970)

Submitted November 4, 1931.   Decided November 17, 1931.

*File, Goldsmith & Scherer,* for appellant.
*J. W. Maxwell,* for appellees.

HATCHER, JUDGE:

This is a suit to enjoin the termination of a contract relating to a right of way for a pipeline. The circuit court perpetuated the injunction and defendant appeals.

On April 15, 1924, the defendant executed a deed to plaintiff, S. C. Ballengee, for a lot in the city of Beckley. On the

same day the defendant executed a written contract "leasing" to Ballengee a right of way for a pipeline across the property of the defendant from its railroad sidetrack to the lot that day conveyed by it to him, and giving him the right to unload gasoline and oil tank cars from the sidetrack. The consideration for the right of way was one-half cent a gallon for all gasoline and oil put through the pipeline, with a maximum charge of $50.00 and a minimum charge of $25.00 a month. Both parties agreed to make no other pipeline contract as long as this was in force. Prompt reports and settlements were stipulated. Default therein by Ballengee for sixty days ended his rights; and upon sixty days' written notice he could terminate his responsibility.

A filling station was erected promptly on the lot (in which plaintiff Lowe now has an interest), and the pipeline was constructed. The maximum monthly rental for the right of way of $50.00 was paid for the months of June to December, inclusive, 1924. The minimum monthly rental was paid for the years 1925, 1926 and 1927. The minimum rental was also paid in 1928, with the addition of $81.82 paid on December 31st of that year. In the spring of 1929 the defendant demanded the maximum monthly rental of Ballengee, on the ground that the filling station was procuring its supplies largely from tank wagons, and that the defendant was entitled to one-half a cent a gallon on all gasoline sold on plaintiffs' lot not to exceed $50.00 monthly, whether the gasoline was procured through the pipeline or not. Ballengee admitted purchasing from tank wagons, but denied any responsibility to the defendant for such purchases. The defendant served him with notice on August 31, 1929, that it would terminate the pipeline contract at the expiration of sixty days and plaintiffs then instituted this suit.

The circuit court found that plaintiffs' right was an easement. The defendant contends that because (1) the term of the use is indefinite, (2) the defendant can terminate the contract upon default of the plaintiffs, and (3) Ballengee can terminate the contract at will on sixty days' notice, the right in question is not an easement but a lease, and is governed by the law of landlord and tenant, with the inherent right in

defendant to also terminate the contract at will on sixty days' notice. This contention relates entirely to the duration of the use. Certainty of duration is not listed by the authorities as an essential quality of an easement. An easement may be intermittent, or it may be conditional. See generally, *Robbins* v. *Archer,* 147 Iowa 743; 19 C. J., subject, Easements, secs. 97 and 155. The quality of its duration is merely a matter of contract. A like argument to that of defendant was made with reference to an easement for a water pipeline in *Everett Water Co.* v. *Powers,* 37 Wash. 143., 150-1, but the court disposed of the matter summarily as follows: "It was however competent for Woods (the grantor) to make such a conveyance without any time limitations. * * * The absence of specific time limitations must be construed to mean that no such were intended."

The sole purpose of the contract was to furnish a way through defendant's land for the transportation of gasoline and oil from the railroad sidetrack to the Ballengee lot. The land of the defendant was thus subjected to a specific use for the benefit of the Ballengee lot. This use carried no right to participate in the profits from defendant's land, was not inconsistent with "a general property right in the owner" (the defendant), and was inoperative except in connection with the Ballengee lot. These characteristics clearly make the right in question an easement instead of a lease. Jones on Easements, sec. 1; 19 C. J., subject Easements, sec. 2; 9 R. C. L., subject Easements, secs. 2. and 3. We concur in the following learned observations of the trial chancellor:

> "This is not a contract of lease of real estate, whereby the plaintiff is entitled to the possession thereof. He is not entitled to the use and occupancy of the real estate over which his pipe line is located; neither is he entitled to the exclusive use and occupancy of the immediate real estate over which the pipe line runs. It confers no right to participate in the profits arising from the real estate of the defendant company. A lease confers such right. The profits derived from this are in connection with the use and occupancy of the land of the plaintiff. This distinguishes it from a lease.

It seems to me that the rights and privileges here granted partake of the nature of an easement appurtenant to the land conveyed by the defendant company to the plaintiff. As a rule of construction courts favor the appurtenant easement rather than an easement in gross, and if the right in controversy is in its nature an appropriate, useful adjunct to the land conveyed, having in view the intention of the grantee as to its use, and there being nothing to show that the parties intended it to be a mere personal right, it is usually held to be appurtenant and not in gross. It is further held that an easement is never construed to be in gross when it can fairly be construed to be appurtenant. It is not necessary that an easement be created by the same instrument. It is not necessary that it have the same duration as the dominant estate. * * * Of course it being an incorporeal right in hand, it lies in grant rather than in livery. This instrument in the operative part does not use the word 'grant', but this is not necessary. Any words are sufficient if they clearly manifest an intention to create the right in question."

In support of the last statement of the chancellor, see 19 C. J., p. 910, secs. 91 and 96; 9 R. C. L., p. 748, sec. 17.

Much of defendant's brief is devoted to what the parties to the contract said in their negotiations, prior to its execution, for the purpose of showing that defendant is entitled to demand rental on the gasoline purchased by plaintiffs from tank wagons. The written contract bound Ballengee merely to pay the one-half cent per gallon "on all gasoline and oil put through said pipeline." The contract is not ambigious. It contains no reference whatsoever to gasoline and oil procured from tank wagons. Settled law treats the written contract as the complete expression of the final agreement between the parties and forbids that we enlarge the instrument because of preliminary oral statements. *Long* v. *Perine,* 41 W. Va. 314.

Complaint is also made because the final decree is too sweeping in its terms and because it perpetuates the injunction without reference to the conduct of the plaintiffs. Plaintiffs have signified that they have no objection to a modification of the decree, so that it shall enjoin the defendant merely

from terminating the contract and from preventing plaintiffs' using the railroad sidetrack (as permitted by the contract) for such time as they perform their covenants under the contract. Accordingly the decree of the circuit court will be so modified, and as modified, will be affirmed.

*Modified and affirmed.*