CHARLES HARTMANN, DEWITT B. BAYER

*v.*

THE WINDSOR HOTEL CO., *et al.*

(No. 10381)

Submitted October 2, 1951. Decided December 18, 1951.

*Handlan, Garden, Matthews & Hess, Joseph R. Curl,* for appellants.

*Goodwin, Nesbitt, Spillers & Mead, Dayton, Campbell & Love,* and *Charles M. Love,* for appellees.

Fox, President:

This suit was originally instituted by Charles Hartmann against the Windsor Hotel Company, a corporation, Vernon B. Derrickson, Derrickson Hotels, Inc., a West Virginia corporation, and The Blades Corporation, a West

Virginia corporation, the purpose of which was to collect the sum of $15,000.00, alleged· to be due to him from the Windsor Hotel Company, growing out of the sale of its hotel property, located in Wheeling, West Virginia. The cause was before us on certification of the pleadings, decided on the 15th day of February, 1949, and reported in 132 W. Va. 307, 52 S. E. 2d 48. Upon remand of the cause to the Circuit Court of Ohio County, DeWitt B. Bayer, a defendant named in plaintiff's original bill, but who had not been served with process, nor until that time, had he appeared in the cause, filed his answer and crossbill, and brought into the cause, as additional defendants, Russell B. Goodwin, Trustee, and the Wheeling Dollar Savings & Trust Company. The general purpose of said answer and crossbill, so filed by Bayer, was to secure the enforcement of an alleged contract of sale of the Windsor Hotel in the City of Wheeling, out of which the claim of the plaintiff arose. The issues were presented, a trial had in the Circuit Court of Ohio County, resulting in the dismissal of the original bill filed by Hartmann, and the amended answer and crossbill of DeWitt B. Bayer, the result of which was that the plaintiff and cross complainant took nothing by their suits. This decree was entered on July 6, 1950, and on March 19, 1951, at the instance of the plaintiff and cross complainant, we granted this appeal. To make this opinion complete, it will be necessary to repeat much of the matter contained in the opinion filed when the case was formerly· before the Court.

In July, 1946, the Windsor Hotel Company was the owner of what is commonly known as the Windsor Hotel property in the City of Wheeling, which property was then under lease to the Derrickson Hotels, Inc. This lease was entered into on the 31st day of May, 1940, and leased said property to Vernon B. Derrickson for a term of five years, with the privilege of extension for an additional five years, which privilege appears to have been exercised, and said lease was assigned by the lessee to Derrickson Hotels, Inc. The lease contained this provision:

"It is agreed by the parties hereto that should the lessor receive a bona fide offer for the purpose [sic.] (purchase) of the property hereby leased at any time during the term of this lease, then said offer shall be immediately communicated to the lessee and the lessee shall have thirty (30) days in which he may purchase said property under the terms and conditions contained in said offer."

Early in July, 1946, the plaintiff, Charles Hartmann, came in contact with certain persons in the City of Chicago, who were represented to him at that time to be desirous of purchasing hotel properties or other real estate in Wheeling, and through his efforts the cross complainant, DeWitt B. Bayer, came to Wheeling about the 8th day of July, 1946, for the purpose of investigating the Windsor Hotel property and to negotiate for its purchase. Negotiations for the sale of the hotel progressed to the point that on July 9, 1946, the said Bayer addressed to the Windsor Hotel Company a letter, the pertinent provisions of which, so far as this litigation is concerned, read as follows:

"The undersigned hereby offers to purchase the Windsor Hotel property, including all buildings, equipment, furniture, furnishings and personal property of every kind, nature and description contained in said buildings or used in the operation of said hotel property or any of the leased portions thereof for the sum of Three Hundred and Fifteen Thousand Dollars ($315,-000.00).

"In connection with said purchase, you will pay a brokerage commission of Fifteen Thousand Dollars ($15,000.00) to Charles Hartmann, of Wheeling, West Virginia, which is the full and complete brokerage commission in connection with the sale of this property; should said brokerage commission exceed the sum of Fifteen Thousand Dollars ($15,000.00) the undersigned will pay any excess.

\* \* \*

"This offer shall be open for acceptance by you subject to the terms of that certain lease dated

the 31st day of May, 1940, by August 1, 1946, and shall be subject to complete acceptance by you on or before August 15, 1946; otherwise, at the option of the undersigned, said offer shall become null and void and the earnest money tendered herewith shall be forthwith returned to the undersigned."

The offer contained a statement that Bayer had deposited, as earnest money, with the Half Dollar Trust and Savings Bank of Wheeling the sum of $10,000.00, and an agreement to deposit with said bank an additional $15,-000.00 within three days after the acceptance of the offer, and the balance of the purchase money was to be deposited within eight days after notification of the acceptance of the offer. The reference to the lease of May 31, 1940, was to call attention to the right of Vernon B. Derrickson, who in the meantime had assigned the benefit of his lease to the Derrickson Hotels, Inc., to purchase the hotel upon the same terms and conditions as those proposed in the offer then made by Bayer.

It was understood at the time that the offer so made would be submitted to the stockholders of the Windsor Hotel Company for their approval or disapproval.

The next step in the transaction was a notice by the Windsor Hotel Company to its stockholders of a special meeting to be held in the City of Wheeling on July 29, 1946, for the purpose of considering the offer to purchase the hotel which had been theretofore made by Bayer. This notice, so far as pertinent, reads as follows:

"To Stockholders of the Windsor Hotel Company:

"Please take notice that a Special Meeting of the Stockholders of The Windsor Hotel Company will be held at the Windsor Hotel, in the City of Wheeling, Ohio County, West Virginia, on the 29th day of July, 1946, at 10:00 A. M., Eastern Daylight Savings Time, for the following purposes:

" (1) To consider and either accept or reject an offer made by DeWitt B. Bayer, under date

of July 9, 1946, to purchase all of the Windsor Hotel property, including all buildings, equipment furniture, furnishings and personal property of every kind, nature and description contained in said buildings or used in the operation of said Hotel property, for the sum of Three Hundred and Fifteen Thousand Dollars ($315,000.00), of which Fifteen Thousand ($15,000.00) shall be paid as brokerage commissions.

"(2) To consider and either accept or reject an equivalent offer, if made, for the purchase of the same property by Vernon B. Derrickson, who is now the Lessee of the Windsor Hotel property and, under the terms of his Lease, dated May 31, 1940, is given the privilege of purchasing said property within thirty (30) days under the same terms and conditions contained in any bona fide offer for the purchase of said property. The said Lessee, Vernon B. Derrickson, has been notified of the offer of DeWitt B. Bayer and furnished a copy of the same."

A proxy form was furnished to each stockholder, accompanied by a general statement of the financial condition of the Windsor Hotel Company, a corporation, and in that proxy it is stated that the meeting was then being called "To accept the offer of DeWitt B. Bayer, dated July 9, 1946, to purchase all of the property of The Windsor Hotel Company for the sum of $315,000.00 or to accept an equivalent offer, if made, by Vernon B. Derrickson, or to accept any more favorable offer that may be received from anyone prior to the date of said Meeting, * * *."

The stockholders meeting was duly held, and more than sixty per cent of the stock was represented by persons then present or by proxy, and a resolution was adopted in words and figures following:

"Whereas, the Officers and Directors of The Windsor Hotel Company have considered and recommended the acceptance of the offer of DeWitt B. Bayer, dated July 9, 1946, to purchase all the property and assets of the Company or to accept an equivalent offer of Vernon B. Derrickson, if one be received; and

"Whereas, it appears to be the concensus of opinion that said offer of DeWitt B. Bayer, or an equivalent offer, should be accepted by the Company;

"Now, Be it resolved, that the said offer of purchase of DeWitt B. Bayer, dated July 9, 1946, be and it hereby is accepted, subject to the right and privilege of Vernon B. Derrickson to purchase the said property and assets of the Company under the terms and conditions of his Lease; and

"Be it further resolved, that the Officers and Directors be authorized to notify DeWitt B. Bayer by August 1, 1946 of the acceptance of his offer, subject to the terms of the Lease with Vernon B. Derrickson, dated the 31st day of May, 1940; * * *."

On July 29, 1946, the Windsor Hotel Company, by R. D. Irvine, its secretary-treasurer, wrote the following letter to DeWitt B. Bayer:

"A Special Meeting of the Stockholders of The Windsor Hotel Company was held today at the Windsor Hotel to consider your offer of purchase of the property of that Company, dated July 9, 1946, for the sum of $315,000.00, which amount includes a brokerage commission of $15,000.00, and an equivalent offer, if made by Vernon B. Derrickson.

"Your offer was read in open meeting and carefully considered and more than 60% of the stock voted in favor of accepting your offer, subject to the terms of the Lease dated the 31st day of May, 1940, by the terms of which Lease the lessee, Vernon B. Derrickson, is given the right and privilege of purchasing said property of the Company within 30 days after notification under the same terms and conditions.

"You may, therefore, consider your offer accepted, subject to the rights of Vernon B. Derrickson under his said Lease, and may act accordingly.

"We shall advise you on or before August 15, 1946, of the action of Vernon B. Derrickson in making an equivalent offer."

Very soon after this letter was written, Vernon B. Derrickson, apparently acting in the name of Derrickson Hotels, Inc., elected to purchase the hotel under the provisions contained in his lease. There is nothing in the record showing how this election was made, but on August 1, 1946, the Windsor Hotel Company, by Harry W. Friedel, its president, wrote the following letter to DeWitt B. Bayer:

> "This is to notify you that Vernon B. Derrickson, lessee of the Windsor Hotel, in this City, whose Lease is dated May 31, 1940, has elected to purchase all of the property of The Windsor Hotel Company under the same terms and conditions of your offer dated July 9, 1946, and, as you know, Vernon B. Derrickson, as lessee, has that right and privilege under the terms of his said Lease.

> "This Company, therefore, advises you that it cannot make complete acceptance of your offer and, under the circumstances, must accept the offer of Vernon B. Derrickson. Mr. Derrickson has been advised of the acceptance of his offer and you are now at liberty to withdraw the earnest money of $10,000.00 deposited by you with the Half Dollar Trust & Savings Bank, of this City."

Following this letter, Bayer appeared to have accepted as true the representation and statement contained in this letter that Derrickson had elected to purchase the hotel property under the same terms and conditions as those contained in the offer theretofore made by Bayer. Acting upon this statement and representation, as he had the undoubted right to do, Bayer promptly made application to the Half Dollar Trust & Savings Bank of Wheeling for the return of the sum of $10,000.00 deposited in said bank on July 9, 1946. On August 7, 1946, the Windsor Hotel Company, by R. D. Irvine, its secretary-treasurer, in a letter to the said bank authorized the return of the said sum of money to Bayer and contains this statement:

> "As you were advised, Mr. Vernon B. Derrickson had a privilege clause in his lease giving him

the right to purchase the property upon the same terms and conditions offered by Mr. Bayer. Mr. Derrickson has advised us that he will purchase the property under this privilege clause, and we have in turn advised Mr. Bayer some days ago of this fact."

This appears to have ended Bayer's connection with the matter at that time; but Hartmann, presumably on the assumption that Derrickson was purchasing the hotel under the same terms and conditions as those contained in the offer to purchase made by Bayer, made claim for his commission, to Derrickson and the Windsor Hotel Company, which was promptly denied by both. Hartmann then instituted an action of law, by way of notice of motion, which was afterwards dismissed. This suit in equity was then instituted at August Rules, 1947. In the bill filed in the cause, all of the matters hereinabove set out were alleged. A demurrer was interposed to the said bill, which the trial court sustained, on the ground that the contract between DeWitt B. Bayer and the Windsor Hotel Company for purchase of the hotel was a conditional one, and not binding on either party. On appeal from that holding, we held that the correspondence which has been set out in this opinion, between Bayer and the Windsor Hotel Company, constituted, as between them, an unconditional and binding contract on the part of the Windsor Hotel Company to sell to Bayer the Windsor Hotel Property, at the price of $315,000.00, of which the sum of $15,000.00 was to be paid to Charles Hartmann as commission; and that on the pleadings Hartmann was entitled to recover that amount from the Windsor Hotel Company; but that there was no obligation to Hartmann existing at that time on the part of the Derrickson Hotels, Inc., or the Blades Corporation, or Vernon B. Derrickson, and the demurrer as to them was sustained.

The case was remanded to the Circuit Court of Ohio County, and on March 21, 1949, DeWitt B. Bayer appeared in the cause for the first time and asked leave to file his answer and crossbill to the plaintiff's bill, which

answer and crossbill were permitted to be filed, and process was directed to issue against the complainant, Charles Hartmann, and the defendants, the Windsor Hotel Company, a corporation, Vernon B. Derrickson, Derrickson Hotels, Inc., a corporation, the Blades Corporation, a corporation, and against Russell B. Goodwin, Trustee, and the Wheeling Dollar Savings & Trust Company, a corporation, and all of the said persons against whom process was directed have appeared in the case.

It is not necessary to go into detail in setting up the matters contained in the answer and cross complaint of DeWitt B. Bayer. The matters set out in this opinion, touching the negotiations and completed contract for the purchase of the hotel, are alleged. It is also alleged that cross complainant did not have knowledge of the transactions which took place between the defendants, the Windsor Hotel Company, Vernon B. Derrickson, Derrickson Hotels, Inc., the Blades Corporation, Russell B. Goodwin, Trustee, and the Wheeling Dollar Savings & Trust Company, until the rendering of the decision in the certified cause aforesaid on the 15th day of February, 1949, after which there was called to his attention a statement contained in one of the briefs filed in said cause on the part of the Windsor Hotel Company, to the effect that the said Vernon B. Derrickson paid the Windsor Hotel Company the sum of $300,000.00, represented as being the same amount as the Windsor Hotel Company would have received from Bayer as set forth in his offer of July 9, 1946. He averred that immediately thereafter he caused the situation to be investigated, and promptly filed his answer and crossbill. In his original answer and crossbill, cross complainant avers that there was a conspiracy to defraud him on the part of the Windsor Hotel Company, Vernon B. Derrickson, Derrickson Hotels, Inc. and the Blades Corporation, in that he was caused to believe that the said Vernon B. Derrickson, and Derrickson Hotels, Inc., were buying the said hotel property under the same terms and conditions as those contained in the offer he made for the purchase of said property. He averred that he was ready and willing to comply with

the terms of his said offer of July 9, 1946, which he alleged was accepted by the Windsor Hotel Company by its letter of July 29, 1946; alleged that subsequent to that the conveyance of the hotel property, by the Derrickson Hotels, Inc. to the Blades Corporation, was in fraud of his rights, and with full knowledge thereof; and that the various holders of the legal title to the said hotel property held the same, in law and equity, as trustees for the benefit of the cross complainant; that they had been operating said hotel at a large profit, and were accountable to him for the rents and profits thereof. His prayer was for the specific performance of his contract for the purchase of the Windsor Hotel property, for an ascertainment of the profits to which he claimed to be entitled on account of the operation of the hotel property, from the time and date he was entitled to the possession thereof under his contract, and for general relief.

On March 1, 1950, Bayer filed an amended answer and crossbill to the bill of complaint, in which he sets up in substance the same matter contained in his original answer and crossbill, but, in effect, withdraws the charge of conspiracy, and apparently relies only on his contract rights. He still averred his willingness and ability to comply with the terms of his contract to purchase the hotel property, and insisted on his right to do so. There was a demurrer on the part of the Windsor Hotel Company, and the other defendants, to the original answer and crossbill filed by Bayer, which the court overruled, and an answer filed by the same parties. There was an answer to the amended answer and crossbill, and a demurrer interposed by Charles Hartmann thereto was overruled.

Following the making up of the issues in the cause, the Windsor Hotel Company, and the defendants, other than Bayer, proposed an issue out of chancery, to be tried by a jury, and the following questions were propounded:

"(1) Did DeWitt B. Bayer and Charles Hartmann agree with the Officers of The Windsor Hotel Company at the time the offer of sale was

prepared and delivered on July 9, 1946, that Vernon B. Derrickson could meet said offer under the terms of his Lease by paying the sum of $300,000.00, and, in that event, neither The Windsor Hotel Company nor Vernon B. Derrickson would be required to pay any real estate commissions?

"(2) Did Charles Hartmann at the Stockholders' Meeting of The Windsor Hotel Company held on July 29, 1946, or at any time prior thereto, agree with the officers and stockholders of The Windsor Hotel Company that, if Vernon B. Derrickson purchased the Hotel property for the sum of $300,000.00 under the Option in his Lease, the said Charles Hartmann would receive no commissions from The Windsor Hotel Company or Vernon B. Derrickson?"

Written objections to these questions, on the part of the plaintiff and Bayer, were overruled, and the issue ordered. A trial of the issue, held before a jury in the Circuit Court of Ohio County, resulted in a failure on the part of the jury to agree on the answers to be made to the questions propounded; whereupon, on July 6, 1950, the circuit court entered its final decree in the case finding for the defendants, and dismissing the bill of Charles Hartmann, and the crossbill of the complainant, DeWitt B. Bayer, and requiring them to pay the costs of the suit. There was filed with this decree a memorandum opinion which was made a part of the record, and to which we will hereafter refer.

It is apparent that the case now before the Court, while involving the same legal principles, is quite different in its application to the parties and their rights, from the case before us on certification. The original bill was filed by Charles Hartmann for the purpose of collecting a definite commission claimed by him, and was so filed upon the assumption that the title of the hotel property was not involved, and that it had been transferred from the Windsor Hotel Company to the Derrickson Hotels, Inc. He contended that his right to his commission depended upon the breach of a contract,

of which contract, if carried out, he would have been the beneficiary. As the case is now presented, we have the claim of Bayer to the specific performance of the same contract out of which Hartmann's rights to his commission accrued; and it follows that if Bayer is entitled to the relief he claims in his amended answer and crossbill, then Hartmann's right to his commission is clear; because that contract specifically provides for the payment of such commission, and the specific enforcement of that contract will provide ample funds to pay such commission and to pay the net amount which, at that time, it was contemplated would be paid to the Windsor Hotel Company.

If there be such a thing as the law of the case, though technical objections may be made to the use of the term as applied to the present situation, it exists in the case at bar. As stated above, there is no difference in the legal principles involved in the claim Bayer now makes, and the claim made by Hartmann when the case was first before this Court. In our former decision, we went to some length into the factual situation as disclosed by the pleadings, and we reached certain conclusions which would, at that time, have been applicable to Bayer had he appeared in the suit and filed the claim which he now asserts. We can no better state our position than to repeat what we said in that case. Aside from questions which have been since raised, which will be given due consideration, we think it settles the fundamentals of the issue now before us, and we are not disposed to change or modify the language there used.

> "The defendant, The Windsor Hotel Company, does not appear to us to be in a position to avoid liability in this case. It leased its property to Vernon B. Derrickson on May 31, 1940, and, apparently, at that time contemplated that it might want to sell the same during the term of the lease. It gave to its lessee what may be termed a favored position, and provided that in the event it should receive a bona fide offer of purchase for the property during the term of its lease, it would immediately communicate that

offer to the lessee, and that he might have the right, within thirty days thereafter, to purchase the property under the terms and conditions of said offer. That is a perfectly plain and simple statement about which there should be no misunderstanding. It seems clear that during the period of its negotiations with DeWitt B. Bayer it acquainted him with the terms of this lease, and of Derrickson's rights thereunder, because in Bayer's offer of July 9, 1946, he refers to the lease and provided, in effect, that any acceptance of his offer should be considered as subject to the terms of the lease; and when, on July 29, the Hotel Company accepted Bayer's offer, it did so subject to the terms of the lease. Then on August 1, 1946, the Hotel Company advised Bayer that Derrickson had elected to purchase the property under the terms of his lease 'under the same terms and conditions of your offer dated July 9, 1946'. As it now develops, no such election was ever made, but, on the contrary, The Windsor Hotel Company permitted Derrickson to purchase the property, not on the terms of the Bayer offer, but for a consideration of $15,000.00 less than Bayer would have paid. Furthermore, in the letter of the Hotel Company to Bayer, dated July 29, 1946, it was stated that at the time they considered Bayer's offer they also considered an equivalent offer, if made, by Vernon B. Derrickson. At all times it seems to have been understood that Derrickson or his assignee, under his lease, was not entitled to purchase this property except upon the same terms and conditions as those provided for in a bona fide offer therefor, and that Bayer's offer of July 9, 1946, was such an offer is not questioned. The Windsor Hotel Company then had the power to provide for the payment of brokerage fees, now claimed by the plaintiff, for which provision was made in the Bayer offer, and in the acceptance thereof. For some reason it chose to waive its power in this respect, and permit Derrickson Hotels, Inc. to purchase the property without providing for the payment of brokerage charges. That was a clear breach of its contract with Bayer and such breach operated to destroy plaintiff's right to brokerage fees provided for therein. That brokerage charges were expected to accrue

and be paid is evident from the terms of the Bayer offer, and its acceptance, because it is specifically mentioned in both the offer and its acceptance. We do not discuss this conduct on the part of the Hotel Company. Apparently it could not expect to profit thereby, and the only effect of its act in selling the hotel property to Derrickson Hotels, Inc. was to deprive plaintiff herein of compensation for services which apparently he had rendered in connection with the sale of this property. The brokerage fees involved are understood to be the usual fees for services of that character, and we need not consider the situation which might arise in the event of a claim for brokerage fees not made in good faith."

The trial court justified its decision upon certain parol testimony which it permitted to be introduced to the jury which tried the issue out of chancery, and which testimony the court considered in making its decision. Permission to introduce such testimony was based, as we understand, on the belief that there existed certain confusion or ambiguity in respect to the payment of commission, which, in a certain sense, is the heart of this controversy. In justice to the trial court, we can do no more than to quote the language of the written opinion which is filed and made a part of the record, and in that opinion the court said:

"* * * There remains the question most strongly urged by counsel for complainant and cross complainant. That question is, 'Does the contract embodied in the July correspondence fall within the parol evidence rule, so that it cannot be varied by parol testimony and therefore must be taken to mean that the Supreme Court said it did, without regard to the understanding of the parties?' It is respectfully submitted that no one can go through the record in this case and believe that the parties thought or, for that matter, under the circumstances had any right to think that Derrickson would have to pay commission. Taking the correspondence as it stood, the Supreme Court reached an opposite conclusion; while this court, without any parol testimony, without knowing any more about the matter than

did the Supreme Court by merely reading the letters, concluded that no such commission payment was required. Surely these statements show some little ambiguity in the contract—something that opens the door to parol evidence by way of explanation. But let it be assumed that this is erroneous. We have still the higher rule. When parties, by conduct and statements, clearly show what a contract means, they will not be heard later to insist that the language should be so construed as to prevent the very interpretation that they themselves had given it. This expression 'under the same terms and conditions' was, in effect, taken over from the Derrickson lease. There the words used were 'under the terms and conditions contained in said offer.' The words sufficiently ambiguous to cause a discussion about commissions. However, it would appear that nobody thought it was necessary to insert a clause that Derrickson should not be required to pay commissions, and this court fell into a similar error."

Five members of this Court, living and dead, who have considered this case, have never believed that there was the slightest ambiguity in the contract between cross complainant, Bayer, and the Windsor Hotel Company, touching the sale of the Windsor Hotel property. Therefore, we are not in accord with the expressed belief of the trial court that no one can go through the record in this case and find, or has a right to find, that Derrickson was required to pay a commission should he elect to purchase the hotel on the same terms and conditions as those offered by Bayer. It is respectfully suggested, that, under our judicial system, in all matters where a judgment or decree is the final action of a court of last resort, the decision of that court constitutes the law of the case, and a difference of opinion between that court and the trial judge does not create an ambiguity which entitled the trial judge to permit evidence to be introduced on the theory that the appellate court may have been wrong, and the trial court right. This does not foreclose the idea that the appellate court could be wrong, and the trial court right; but, in the very nature of things,

there must be some final arbiter, and the appellate court happens to occupy that position. We are of the opinion that the position of the trial court that the contract for the sale of the Windsor Hotel property, created by the correspondence of July, 1946, is ambiguous to the extent of justifying the introduction of parol evidence to explain such ambiguity, or to any extent whatever, is not tenable, and that such evidence was inadmissible, and should not have been considered by the court in its decision of this case.

In holding that the parol evidence rule applies to this case, and that the testimony of Irvine and Friedel, touching conversations with Bayer at the meeting of July 9, 1946, before and at the time the offer was being prepared, was inadmissible, we state no new doctrine. We are stating a rule steeped in the wisdom of the generations which have developed the common law. We are upholding a rule which is necessary to the stability of business agreements, the breakdown of which would result in immense confusion, the unsettlement of agreements, in perjury, and in all of the evils that attend the breakdown of a firm system which holds that where people get together and negotiate on a contract, and voluntarily enter into a writing, that contract stands as the agreement between the parties, and excludes all reference to what may have occurred contemporaneously with, or prior to the execution of the written agreement. Of course, if that writing be obtained by fraud, duress, mistake or insufficiency of consideration, or if there be ambiguity, patent or latent, which makes the writing susceptible of different understandings, or different interpretations, parol evidence may be admitted to explain what the writing was intended to mean.

We had this question before us in the case of *Central Trust Company* v. *Virginia Trust Company,* 120 W. Va. 23, 197 S. E. 12, which, of course, was not the first case on the subject, but it does contain a general discussion of the principles involved, and a resume of the decisions of this Court as they had been decided at that date. It

was a case where a written contract had required certain parties thereto to pay, individually, certain coal royalties. It was sought to show that it was not so intended. There was conflicting evidence on the question, and many of the parties to the transaction were deceased. In that case, we held:

> "In the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration, the terms of an unambiguous written agreement may not be varied or contradicted by parol evidence of statements of any of the parties thereto made contemporaneously with or prior to the execution of such agreement."

> "An unambiguous written agreement entered into as the result of verbal or written negotiations will, in the absence of a showing of fraud or mistake, be conclusively presumed to represent the final agreement of the parties thereto, and may not be varied or contradicted by evidence of conversations or statements had or made at the time of or prior to its execution."

In that case, numerous authorities were cited in support of the decision there made, among which were: *Lockwood* v. *Holliday,* 16 W. Va. 651; *Hukill* v. *Guffey,* 37 W. Va. 425, 16 S. E. 544; *Howell* v. *Behler,* 41 W. Va. 610, 24 S. E. 646; *Ins.* Co. v. *Board of Education,* 49 W. Va. 360, 38 S. E. 679; *Uhl* v. *Railroad Company,* 51 W. Va. 106, 41 S. E. 340; *Ryan* v. *Nuce,* 67 W. Va. 485, 68 S. E. 110; *Ballengee* v. *Beckley Coal & Supply Co.,* 111 W. Va. 304, 161 S. E. 562; *Capital City Bank* v. *Foster,* 112 W. Va. 520, 165 S. E. 802; *O'Farrell* v. *Service Co.,* 115 W. Va. 502, 177 S. E. 304.

Since our decision in the *Central Trust Company* case, this Court has held in *Ligon* v. *Cabot,* 123 W. Va. 400, 15 S. E. 2d 595, that:

> "Parol evidence is not to be permitted to supplement the terms of a binding written instrument upon a subject matter therein dealt with by establishing a prior or contemporaneous oral additional agreement."

In *Colerider* v. *Central National Bank of Buckhannon, et al.*, 125 W. Va. 760, 25 S. E. 2d 903, we held:

> "The construction of an unambiguous written agreement, or a series of such agreements read together, is a matter of law for the court; and oral testimony of parties thereto, or others, as to what was intended thereby, will not be considered."

In the case of *Babcock Coal & Coke Company* v. *Brackens Creek Coal Land Company*, 128 W. Va. 676, 37 S. E. 2d 519, we held:

> "A valid contract expressing the intent of the parties in unambiguous language will be applied and enforced according to such intent, and without resort to matters extrinsic to such contract."

In that case, there was a written lease, the terms of which were being interpreted. In *Kanawha Banking and Trust Company* v. *Gilbert*, 131 W. Va. 88, 46 S. E. 2d 225, this Court held:

> "Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration."

> "An unambiguous written contract entered into as the result of verbal or written negotiations will, in the absence of fraud or mistake, be conclusively presumed to contain the final agreement of the parties to it, and such contract may not be varied, contradicted or explained by extrinsic evidence of conversations had or statements made contemporaneously with or prior to its execution."

> "When a written contract is clear and unambiguous its meaning and legal effect must be determined solely from its contents and it will be given full force and effect according to its plain terms and provisions. Extrinsic evidence of the

parties to such contract, or of other persons, as to its meaning and effect will not be considered."

The last case on the subject is that of *Shaffer* v. *Calvert Fire Ins. Co.*, 135 W. Va. 153, 62 S. E. 2d 699, wherein we held:

"Parol evidence to contradict, add to, alter, enlarge, or explain a complete written agreement, which is clear and unambiguous, or to vary its legal effect, is inadmissible."

"A contemporaneous oral agreement, which contradicts, adds to, alters, enlarges, or explains a complete written agreement between the same parties, or varies its legal effect, when such written agreement is clear and unambiguous, is void and of no binding force or effect."

Thus it will be seen that this Court from the beginning has been consistent in maintaining the force and effect of the parol evidence rule. We are convinced of the necessity for so doing, and we think the case at bar is an illustration of the reason why there should be such a rule. We have here a clear, unambiguous agreement to sell property valued at the sum of $300,000.00 or more, on certain specific terms and conditions. It is sought to change those terms and conditions and read into them something that the writings themselves do not contain. Four interested persons testify, each in his own interest, and their statements are in conflict. We impute no lack of moral integrity to any of them, but unconsciously they are swayed by their interests. We are asked to overturn a plain agreement on this character of testimony.

Having held that the testimony of witnesses, as to the statements made, contemporaneously with the preparation of the offer that Bayer purchase the Windsor Hotel, on July 9, 1946, was inadmissible, it is, perhaps, unnecessary to consider that testimony; but as bearing upon the advisability of enforcing the parol evidence rule in its strictness in this case, it is permissible, we think, to discuss the testimony of two witnesses who impute to Bayer statements not consistent with the written offer he pre-

pared and signed on that date. Russell D. Irvine, secretary-treasurer, of the Windsor Hotel Company, stated that the question of a brokerage commission was discussed prior to the preparation of the Bayer offer. It seems to have been contemplated by all concerned that there would be a commission. That is attested by the fact that prior to Bayer's oral offer to purchase the hotel, the question was raised as to the amount of commission. It will be understood that Derrickson could purchase the hotel on the same terms and conditions as those offered by Bayer. So, naturally, the question was raised as to what might happen in case Derrickson did elect to purchase the hotel under his option. This situation, concerning the brokerage question, was discussed, and Irvine stated: "My recollection is that Mr. Goodwin asked if Mr. Derrickson chooses to exercise his option, is he expected to pay $15,000." And when asked what was the answer to that query, he stated that the answer was "no", and when asked by whom, he replied: "I believe by Mr. Bayer." That represents Mr. Irvine's testimony on this question. Mr. Harry W. Friedel, who was President of the Board of The Windsor Hotel Company, was asked this question: "I will ask you, Mr. Friedel, if anything was said during the period of time the offer was being dictated, by DeWitt Bayer regarding what would occur in the event Derrickson Hotels exercised its option to purchase under its lease arrangement, or lease agreement, with the Windsor Hotel?", to which he answered: "Mr. Goodwin raised the question and asked in case Mr. Derrickson exercised his right, the price was $300,000.00." He was then asked: "And what did anyone else say in that particular in regard to that statement?", to which he answered: "That it was understood that way." He was then asked: "Not what was understood. What did anyone—what did Mr. Bayer, for example, or Mr. Hartmann, or Mr. Factor say, if they did say anything, with reference to Mr. Goodwin's statement, or in reply to his statement?", to which he answered: "I can't recall any definite statement." Both Bayer and Hartmann deny that they at any time made any statements concerning the

question of a commission in the event the hotel was purchased by Derrickson. They have insisted, from the beginning, that Derrickson had no right to purchase the hotel, except on the same terms and conditions that would guarantee to Hartmann the commission which would have been paid had Bayer purchased the hotel. We are at a loss to understand how the statements of Irvine and Friedel, in face of the express denials on the part of Hartmann and Bayer, can be held to sustain the burden of proof, strict as it is, in cases where the terms of a written agreement are sought to be changed by the use of parol evidence, in contradiction thereof.

The trial court, in its written opinion, refers to the "higher rule" which it defines by saying that: "When parties, by conduct and statements, clearly show what a contract means, they will not be heard later to insist that the language should be so construed as to prevent the very interpretation that they themselves have given it." That implies, of course, a clear showing that such statements are actually made, which requirement, in our opinion, has not been met in this case. We are by no means convinced that Bayer ever made any statement which could reasonably be construed to the effect that Derrickson could purchase the Windsor Hotel property on any terms different from those offered by him for its purchase. If he did so, the court must have relied for proof thereof on the evidence of Irvine and Friedel, and we think that clearly insufficient. The testimony, as to statements made by Hartmann, on the question of a brokerage commission at the meeting of the stockholders held on July 29, 1946, is, of course, not binding on Bayer, and that fact was time and again recognized by the trial court. That testimony, as to Hartmann, becomes important only where the hotel was being purchased by Derrickson. If we hold that Bayer is entitled to have his contract to purchase the hotel specifically enforced, then it follows that Hartmann will be paid his commission, at least to the extent of $15,000.00. His testimony might be considered important on the question of whether there

should be paid by the Windsor Hotel Company interest on that sum from the date Hartmann was entitled to a commission to the present date. That is a question which will be treated later in this opinion.

In view of all of the foregoing, we have come to the conclusion that the cross complainant, DeWitt B. Bayer, is entitled to the specific performance of the contract which was made by the correspondence between him and the Windsor Hotel Company in the month of July, 1946. We think that contract is unconditional, clear and unambiguous. Bayer did everything he was called upon to do. He apparently entered into the contract in good faith, put up his money, and, so far as this record discloses, was able to carry out his contract to the letter. He was advised of the existence of one particular option which, if exercised, would deprive him of the benefit of his agreement, and that was that Derrickson could purchase the hotel on the same terms and conditions as those of his own offering, and he knew that Derrickson had a period of thirty days in which to decide whether he would exercise that option. Within three days after the offer of Bayer had been accepted, subject to the rights of Derrickson, the Windsor Hotel Company, by its responsible officials, made, what this Court understands to be, an absolute misrepresentation of what actually occurred between the Windsor Hotel Company and Derrickson. Bayer was advised by letter that Derrickson had elected to purchase the hotel on the same terms and conditions that Bayer had offered. Bayer had a right to rely on that representation, and if that representation was true, he recognized, and had always recognized, that he could not insist upon his agreement. The record discloses that he simply dropped the matter, made no further investigation, and did not learn until some two and one-half years later that the hotel had, in fact, been sold to Derrickson at the price of $300,000.00, and he learned that fact by certain statements of counsel made in the cause when it was formerly before this Court.

There are suggestions of laches, on the part of Bayer,

but they are supported by only one statement of fact, to the effect that possibly in the fall of 1947, Bayer may have learned from Factor, who was an associate of Hartmann, in the matter of the commission, that he had not received his money. That matter was not followed up, and is not strongly argued. We conclude, therefore, that Bayer, on receiving information that the hotel had been sold to Derrickson for $300,000.00 promptly began an investigation, and within a little more than a month following the final decision of this Court, in February, 1949, filed his original answer and crossbill, setting up his claim to the relief he now seeks, and that laches on his part has not been shown.

We, therefore, hold that the court erred in dismissing the crossbill of DeWitt B. Bayer, seeking specific performance of his contract for the purchase of the Windsor Hotel, and hold that he is entitled to the specific performance of such contract, to be carried out, so far as possible, on such terms and conditions as will protect the parties to this cause in their several rights and interests.

We would, perhaps, be justified in leaving to the Circuit Court of Ohio County the task of providing the means necessary to make effective the decision of this Court that the cross complainant, Bayer, is entitled to the relief he seeks. It is our intention to leave to the said court the details thereof, but by way of suggestion, we think it well to say, as preliminary to the enforcement of his contract, that the cross complainant, Bayer, must, within a reasonable time to be fixed by the trial court, pay into the court the full sum of $315,000.00, the amount he offered to pay for the said hotel. We do not think the cross complainant is entitled to the possession of the hotel, and title thereto, until he has met this requirement. When this is done, we think the payment will relate to the date when it would have been made, in 1946, had he been permitted to purchase the hotel under his contract, and we suggest that the date of September 10, 1946, the date when the hotel was actually conveyed to Derrickson Hotels, Inc., be fixed as the date when Bayer's rights in the

hotel should be treated as having become vested in him. We are of the opinion that cross complainant, Bayer, is entitled to an accounting of the rents and profits of the Windsor Hotel Company from that date forward, to be determined by the existing lease between the Windsor Hotel Company and the Derrickson Hotels, Inc. In other words, on that date Bayer stepped into the shoes of the Windsor Hotel Company, and became entitled to rents and profits under the Derrickson lease. We do not think it will be necessary that there should be any accounting of the actual operation of the hotel. Of course, Bayer, in receiving the rents and profits from the hotel, is accountable for the carrying charges to the same extent as the Windsor Hotel Company would have been, and if Derrickson Hotels, Inc., or the Blades Corporation, have expended money which it would have been the duty and obligation of Bayer to expend, they are entitled to be reimbursed therefor, and only account for the net benefits of the rents and profits had there been an actual lease between Bayer and the operators of the hotel, on the same terms and conditions as those existing between the Windsor Hotel Company and Derrickson Hotels, Inc. The trial court will have no difficulty, out of the fund paid into the court by Bayer, in taking care of the indebtedness to the Wheeling Dollar Savings & Trust Company. The relations between the Blades Corporation and Derrickson Hotels, Inc., and Vernon B. Derrickson, are such that each must stand the risks involved in this litigation. The trial court will exercise its discretion as to the amount of money which should be retained by the court out of the funds belonging to the Windsor Hotel Company in making provision for the just claims of the cross complainant, Bayer, for rents and profits accruing to him. He is entitled to some protection in that respect, and it is not anticipated that the fund paid into the court by Bayer will be fully distributed until the end of this litigation.

We have left the claim of Charles Hartmann, the original plaintiff, until last. Having held that there shall

be specific performance of the contract of sale entered into between the Windsor Hotel Company and Bayer, in July, 1946, it is under the terms of that contract that Charles Hartmann is clearly entitled to the sum of $15,-000.00, as therein stipulated. The remaining question is whether Hartmann is entitled to interest on that sum from the date the same should have been paid to him until actual payment is made. We are of the opinion that he is entitled to interest, and that the same should be paid by the Windsor Hotel Company. His claim was liquidated. He was not paid that sum because of the wrongdoing of the Windsor Hotel Company in failing to require Derrickson Hotels, Inc., or Vernon B. Derrickson, to pay that sum as a part of the consideration for the purchase of the Windsor Hotel. We do not think Hartmann should be punished by being deprived of what he was justly entitled to by the wrongdoing of the Windsor Hotel Company, as unfortunate as it may be to the stockholders of that company. We think it just that interest be paid, if funds are available for that purpose.

Our finding that plaintiff, Charles Hartmann, is entitled to the collection of his commission, with interest, has so far been based upon his rights to such commission under the consummation of the sale of the hotel to the cross complainant, Bayer. In making that holding, we do not mean to say that he is not entitled to such commission in the event Bayer should fail to comply with the requirements we have made necessary to the granting of the relief prayed for by him. Even if Bayer should fail to meet such requirements, we are still of the opinion that Hartmann is entitled to his commission, with interest, to be paid by the Windsor Hotel Company for the reason that Hartmann's claim is based upon grounds independent of the right of Bayer to the specific execution of his contract of sale. We find that the court was in error in refusing to decree a commission to Hartmann, with interest, and that on remand such decree should be entered. The statements attributed to Hartmann at the stockholders meeting on July 29, 1946, are barred under

the parol evidence rule discussed at length in this opinion. It is assumed that Bayer will meet the requirements on his part, laid down in this opinion, and consummate the sale of the hotel to him; but his failure to do so will not affect the right of Hartmann to his commission.

We take note of the position taken by Vernon B. Derrickson, Derrickson Hotels, Inc., and the Blades Corporation, to the effect that the holding of the court in sustaining their demurrer to Hartmann's original bill, as to them, released them from further liability. We only point out that at that stage of the case Hartmann's claim was against the Windsor Hotel Company alone. The injection of the question of the right of Bayer to specific performance of his contract of sale brings all of those parties back into the case, and, while we do not hold them to any personal responsibility for the payment of a commission to Hartmann, their rights may be involved by reason of the new matter injected into the case, and they will be bound by this opinion to the extent necessary to the granting of the relief prayed for by the plaintiff, and the cross complainant, Bayer.

The decree of the Circuit Court of Ohio County, in dismissing plaintiff's bill, and the crossbill of DeWitt B. Bayer, is reversed, and the cause remanded to said court with directions to enter such orders and decrees as may be necessary to specifically enforce the contract of sale for the Windsor Hotel, as the same was stipulated and agreed upon in the written agreement entered into in the month of July, 1946, between the Windsor Hotel Company and DeWitt B. Bayer, and to provide for the payment to Charles Hartmann the commission he claims, with interest; to enter all proper orders and decrees necessary to protect the interests of persons who have in good faith advanced money in carrying out the several transactions which have been made respecting the financing of the sale of the said hotel to the Derrickson Hotels, Inc., and the Blades Corporation; to supervise and enforce the accounting between the parties as to

the rental value of the Windsor Hotel property; and, in general, to carry out the principles announced in this decision.

*Reversed and remanded*
*with directions.*